119 So.2d 588 (1960)
Edward FONTENOT
v.
STATE FARM MUTUAL INSURANCE COMPANY et al.
No. 4955.
Court of Appeal of Louisiana, First Circuit.
March 21, 1960.
*590 Hynes, Mathews & Lane, Baton Rouge, John Rarick, St. Francisville, for appellant.
Wm. T. Bennett, Clinton, Dodd, Hirsch, Barker & Avant, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, TATE, FRUGÉ and LANDRY, JJ.
LANDRY, Judge.
This appeal, by defendants State Farm Mutual Automobile Insurance Company (hereinafter referred to simply as "State Farm") and one Prosper Reech, is from the judgment of the lower court condemning said defendants, in solido, to pay plaintiff, Edward Fontenot, the sum of $4,146.54, with interest and costs, for personal injuries and medical expense sustained and incurred in an automobile accident which occurred within the municipal limits of Jackson, Louisiana, on February 14, 1959, and involved a Ford Pick Up Truck owned and being operated by defendant Reech.
Liability of defendant State Farm is predicated upon its being the admitted insurer of a 1953 Chevrolet owned by Reech but not involved in the accident. Plaintiff concedes the uninsured Ford Pick Up owned by Reech and not the insured Chevrolet was the vehicle Reech was operating on the occasion in question but urges liability of State Farm on the basis of a policy provision referred to as a "temporary substitute automobile clause". Both plaintiff and defendant Reech maintain coverage afforded on the Chevrolet was extended to the Ford truck under the express terms of the temporary substitute automobile clause which states in substance that liability of State Farm extends to any vehicle used by the insured Reech while the Chevrolet was temporarily withdrawn from service for repair.
In the lower court judgment was rendered against defendants upon the finding that the negligence of Reech was the proximate cause of the accident and an amendment to the temporary substitute automobile clause prior to the accident of February 14, 1959, was ineffective and inoperative be cause of its unconstitutionality and consequently, the lack of coverage plead by defendant State Farm was without merit. Negligence on the part of Reech is now conceded by both defendants.
State Farm appeals that portion of the lower court judgment decreeing its liability under the policy involved and also complains of the action of the lower court in adjudging the policy revision unconstitutional.
Defendant Reech appealed the judgment against him but does not seek its reversal, merely its affirmation insofar as it holds his insurer State Farm liable under the policy.
It is undisputed that State Farm issued Reech what is known as a "Family Automobile Policy" covering a six month period commencing February 8, 1958. Unlike stock companies which issue such policies for periods of one year from effective date and renew by issuance of a completely new written policy on or before expiration, State Farm (a mutual company), as is the custom and practice with mutuals, renews its policies at six month intervals by the expedient of mailing the insured a notice of premium due which, if paid within ten days of expiration date, extends the policy for an additional six month period thereby eliminating the writing and mailing of a completely new policy. From its inception Reech's policy was kept in continuous force and effect by successive renewals and was admittedly in effect on February 14, 1959, the date of the accident with which we are concerned in this litigation.
All litigants are in accord that the policy issued by State Farm on February 8, 1958, contained a coverage provision stipulating in substance that an automobile used as a temporary substitute for the insured Chevrolet would be covered by the policy. It is likewise conceded that the term "temporary substitute automobile" as used in the policy is therein defined as follows:
"any automobile or trailer while temporary used as a substitute for the owned *591 automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."
The parties are in agreement that under the quoted policy provision, any vehicle temporarily used by the insured Reech as a substitute for the insured Chevrolet while the latter vehicle was withdrawn from normal use for repair thereto, was protected the same as the Chevrolet even though the substitute vehicle belonged to the named insured and was not specifically mentioned in the policy.
On April 17, 1958, the Casualty and Surety Division of the Louisiana Insurance Rating Commission (hereinafter referred to as "the Commission"), issued its bulletin Number 203 to all liability insurers operating within the state announcing certain revisions in the Standard Form Family Automobile Policy which bulletin, inter alia, contained the following:
"The changes are applicable to all new and renewal policies written on or after May 1, 1958. As respects such policies, either (1) the revised policy form, or (2) the present policy form, together with the appropriate amendatory endorsement, must be used.
Among the changes announced in the aforesaid bulletin is the requirement that the words "not owned by the insured" be inserted after the words "any automobile or trailer" in the hereinabove set forth policy definition of the term temporary substitute automobile. This revision, of course, eliminated from coverage a temporary substitute automobile belonging to the named insured and, if effective, admittedly relieved State Farm of liability herein.
Reech's policy having been issued February 8, 1958, and being renewable at intervals of six months, had an expiration date February 8, 1959. Meanwhile, (on some date between November 20, 1958, and December 15, 1958), Reech acquired the pick up truck involved in the accident. It is acknowledged that on January 8, 1959, State Farm mailed Reech notice of premium due for renewal of his policy upon expiration February 8, 1959. State Farm contends that in conformity with Directive 203 of the Commission on January 8, 1959, it mailed to Reech (in the same envelope with his premium notice), a printed endorsement setting forth the changes called for in the order together with an undated form letter over the signature of one of its vice presidents explaining that changes in policy coverage would be effective as of the next renewal date and rates increased dependent upon coverage and residence. The printed endorsement in question contained, inter alia, the following:
"Endorsement Attached
.......................................
"A revised Family Automobile policy has been prescribed for use in Louisiana. The provisions of the revised Family policy are being applied to your present policy by this amendatory endorsement.
"Several changes have been made in the revised policy. One of the principal areas of change is the restriction of coverage on "non-owned" automobiles furnished for your regular use. If you are now driving such a "non-owned" automobile you should ask your agent for an endorsement to provide this coverage.
"The attached amendatory endorsement is a part of your contract with the State Farm Mutual Automobile Insurance Company. Please read and place it with your policy.
"Your agent will be glad to answer any questions you may have about your automobile insurance.
.......................................
"6518 Amendment of Family Automobile Policy
* * * * * *
"In Part 1, Definitions, `temporary substitute automobile', the words, `not *592 owned by the named insured', are inserted after the words `means any automobile or trailer.'"
Although Reech admits receipt of the premium notice mailed January 8, 1959, he steadfastly denies the envelope in which it was forwarded contained any other document. The trial court found as a fact that Reech did in truth receive the amendatory endorsement along with the premium notice and in this regard, we think his conclusion eminently correct. We deem it unnecessary to indulge in a detailed analysis of the testimony concerning the mailing of the disputed endorsement and sufficient only to point out that certain officials and employees of State Farm testified that the premium notice and other documents were mailed by means of an intricate, modern mailing device, the operation of which was explained in detail from which testimony we conclude (as did the trial court) that the endorsement in question was received by Reech.
The contention that the action of the Commission in ordering a restriction, limitation or reduction in coverage was unconstitutional is predicated on the dual basis (1) the authority of the Commission is expressly limited to rate making and does not extend to amendment or revision of coverage provisions and (2) even if the Commission had authority to decree changes in coverage, its action in the premises constituted a violation of Article 4, Section 15 of the State Constitution of 1921 LSA, in that it amounts to an ex post facto law impairing the obligations of an existing contract and divesting Reech of vested rights. Counsel for Reech argues further that since Commission Order 203 expressly limits its own application to policies "written" subsequent to May 1, 1958, it may not be invoked in the case at bar because the policy of February 8, 1959, was not rewritten by issuance of a completely new instrument in writing but simply continued in force by endorsement.
Counsel's argument that the commission was without authority to declare a revision in basic policy coverage is without merit. A careful reading of the pertinent provisions of the Insurance Code convinces us it contains a clearly expressed legislative intent to confer upon the Commission full and complete regulation of the field of insurance. In this connection we direct attention to Section 2 of the Code, LSA-R.S. Title 22:2 which recognizes and declares insurance is a business affected with the public interest and unambiguously sets forth the avowed purpose of the code to be regulation of insurance in all its phases. Additionally Sections 620 and 621 expressly confer upon the Commission responsibility and authority for approval of all basic policy forms as well as applications, riders and endorsements.
The contention that the commission lacks authority to initiate changes in coverage of its own volition and is restricted to prior approval of changes proposed by insurers is not well taken in view of the foregoing statutory provisions. As previously shown, Section 2 of the Insurance Code LSA-R.S. 22:2 clearly and unmistakably provides that the commission is granted the power and charged with the obligation of regulating insurance in all its phases. This unambiguous provision confers upon the commission authority to regulate and change (within its legitimate discretion) all aspects of the insurance field including revision and amendment of policy coverage provisions consistent with the public interest. The specific provisions of Sections 620 and 621 are not to be construed in limitation of the general authority conferred upon the commission by other provisions of the Insurance Code but rather in extension thereof. The enumeration of fields of specific authority contained in Sections 620 and 621 were not intended to be exclusive and preclude the exercise of any undesignated or unmentioned powers but merely as supplementary of the general supervisory authority contained in Section 2. We hold, therefore, that under the clearly expressed *593 provisions of the Insurance Code hereinbefore cited the commission did not act ultra vires in ordering the revision of coverage of which defendant Reech complains.
We next consider the argument the action of the commission in restricting policy coverage is violative of Article IV, Section 15 of our state constitution in that its application to the case at bar constitutes it an ex post facto law impairing the obligations of an existing contract and divesting the insured Reech of a vested right. In this connection the argument is advanced that since Reech was issued a complete policy in writing only on February 8, 1958, and all renewals thereof were effected by extension of the original agreement and no new written policy was substituted at each renewal period, he, in effect, had a right to demand insurance in conformity with the terms of the original written agreement until such time as State Farm changed the coverage by issuing an entirely new policy on a proper renewal date. In other words, defendant argues that so long as the original policy is not entirely rewritten with the consent of both insurer and insured, the provisions of the original policy may not be altered to reduce coverage and any amendment affecting such unfavorable change to the insured impairs an existing contract and divests the insured of a vested right.
The fallacy of this argument is twofold. First the change was not made by State Farm on its own motion but in obedience to a lawful directive of the supervisory commission applicable to all companies alike. Secondly, Order 203 provided that it would be effective only as to policies written after May 1, 1958. The record is clear that the amendment in question was not placed in effect until the renewal of defendant's policy for the six months period commencing February 8, 1959. That State Farm did not issue a completely new written policy at the end of each renewal period does not ipso facto entitle its policyholders to renewal of their respective contracts under the same policy provisions in force during the preceding policy period. State Farm, as well as any insurer, has the right, subject to supervision and approval by the Commission, to institute changes in its policy provisions at the end of any policy period provided that such change be accomplished in accordance with our insurance code and the rules and regulations promulgated by the commission and proper notice thereof given the policyholders involved.
In the case at bar the protection Reech enjoyed May 1, 1958 was unaffected by the change in question in accordance with Order 203 which prohibited the change in any policy issued or dated on or prior to May 1, 1958. Insofar as Reech was concerned, the revision applied only to the renewal of his policy effective February 8, 1959, which in effect was a completely new policy as fully as though he had been forwarded a duplicate of the original policy issued February 8, 1958. The action of the Commission was not ex post facto in that it did not apply to a contract in force but to an entirely new contract entered into subsequent to the effective date of the regulation. The regulation was issued well in advance of its operative date for the express purpose of affording all then existing policies time to expire and insurers the opportunity to meet the requirements of the order with respect to future contracts. The six month renewal of Reech's policy being in effect the issuance of a new policy each time Reech renewed by timely payment of his premium, and Reech having no vested right to renewal pursuant to the exact terms of the original written policy, the amendment as applied to the policy renewed February 8, 1959, was not an impairment of an existing contract but, in legal contemplation, constituted a change in a new or subsequent contract between the parties. Since the ordered revision did not alter or change the terms or provisions of a contract presently in force, it follows that it did not violate the constitutional prohibition against impairment of contracts and divestment of vested rights.
*594 The contention that the amendatory regulation, if valid, cannot apply to defendant Reech, because Order 203 itself provides its application is restricted to policies "written" after May 1, 1958, is untenable. This argument is founded on the theory that since Reech was issued only one written policy which was continued in force by successive renewals, his coverage was not governed by a policy "written" subsequent to May 1, 1958, consequently, the controversial order has no application.
We cannot subscribe to such a limited interpretation of the word "written" as contained in the order. The testimony of H. P. Walker, Assistant Secretary of the Commission clearly shows it was the intention of the commission that Order 203 apply to all insurance contracts with effective dates commencing subsequent to May 1, 1958, irrespective of whether the term thereof was for a period of one year and evidenced by an entirely new written policy (in the case of stock companies) or for a term of six months and extended by renewal without the confection of an entirely new contract document (in the case of mutual companies). The obvious intent of the directive in question as explained by Walker was to effect what the commission considered a minor reduction in coverage in lieu of a rate increase which alternative the commission deemed in the best interest of policyholders. The provision of the order to the effect it is made applicable to all new and renewal policies issued subsequent to May 1, 1958, is in conformity with Section 635 of the Insurance Code wherein it is stipulated that any policy terminating by its own provisions at a specific expirate date may be renewed or extended, at the option of the insurer, by a certificate or endorsement without the necessity of issuing a new policy (the precise procedure followed by defendant State Farm). The view urged upon us by learned counsel for Reech would do violence to the spirit as well as the express terms and provisions of the order in question. We conclude, therefore, that under the authority vested in the commission pursuant to the hereinabove mentioned sections of the code Order 203, and the endorsement mailed Reech in compliance therewith, was applicable to the policy period commencing February 8, 1959, necessitating the finding the Ford Pick Up Truck owned by Reech and involved in the accident of February 14, 1959 was excluded from coverage.
Defendant's contention that the endorsement should not bind Reech unless directed to his personal attention is without merit. As previously stated, we find the lower court properly found that a copy of the disputed endorsement and explanatory letter was included in the envelope containing the premium notice mailed Reech January 8, 1959, and admittedly received by him. The endorsement clearly indicated the changes in coverage and the accompanying letter of explanation clearly denoted the changes were directed by the commission. That Reech cannot read is no fault of State Farm or its local agent. Upon receipt of the documents in question it was incumbent upon Reech to either request the local agent Kent to explain their content or secure such explanation from some other source. It is obvious that an unconscionable burden would be placed upon insurance companies and their representatives to require that a personal explanation be made to each policyholder in every instance wherein a rider or endorsement is affixed to a policy of insurance in compliance with existing regulations. We have been cited no authority so holding. In effecting changes upon expiration of a policy period, it suffices if the insurer gives reasonable and adequate notice to the insured which we find was done in the case at bar.
Defendant Reech maintains State Farm should be held liable on the ground that although it denied coverage, it, nevertheless, defended the suit on the merits. In this connection, we desire to point out the answer of State Farm contains a denial of liability based on lack of *595 coverage, an alternative defense that Reech was free of negligence and a second alternative defense of contributory negligence on the part of plaintiff. Esteemed counsel for Reech maintains such position is inconsistent and constitutes a waiver of State Farm's defense of lack of coverage. In support of this position, counsel for defendant cites Shehee-Ford Wagon & Harness Company v. Continental Casualty Company, La.App., 170 So. 249; Lang v. Jersey Gold Creameries, La.App., 172 So. 389, and Kansas v. Sun Indemnity Company of New York, La.App., 37 So.2d 621. A careful reading of the cited authorities discloses they hold only that under a policy provision requiring an insurer to defend a certain type of action even though groundless, an insurer is bound to defend the insured and is responsible for attorney's fees and expenses incurred by the insured in defense of the action even though the insurer joins in defense of itself despite its pleading no liability under the policy. These cases do not hold and are not authority for the proposition that an insurer who defends an action despite a denial of coverage waives his right to rely upon the defense of a want of liability. We agree that an insurer who elects to determine for himself that there is no coverage and, therefore, no obligation to defend his insured, does so at the risk of becoming liable to the insured for attorney's fees and expenses incurred by the insured in his defense in the event of an ultimate determination that coverage existed and that the obligation of defense was in fact present. In addition, such election by the insurer exposes it to the risk of payment of any judgment rendered against its insured should the insured be adjudged to have been covered by the provisions of the policy in question. A defense of nonliability coupled with an alternative defense on the merits is not necessarily inconsistent. What the insurer in such position is saying is simply that it does not consider itself liable under the provisions of its policy but that if it be erroneous in such conclusion, it defends the action on the merits. Such a position certainly will not expose an insurer to liability not assumed under its contract and this is especially true in cases, such as the one at bar, in which it is not shown that such action by the insurer has redounded to the detriment of its assured. In this connection it is not even contended in the instant case that the action of State Farm in this regard has adversely affected any substantial right of its insured.
After thorough consideration of the testimony relative to plaintiff's injuries, we are convinced the award of $4,000 therefor by the lower court was manifestly excessive but, considering the condition in which we find the record, we are without either right or authority to correct the inequity with respect to defendant Reech. It will be recalled we stated at the outset Reech did not appeal from the amount of the judgment but contented himself with appealing and asserting the correctness of the lower court judgment in holding defendant State Farm liable. The appeal of State Farm is from that part of the judgment holding it liable in solido with defendant Reech and, in the alternative, that judgment as to itself is excessive and should be reduced. There being no appeal from the amount of the judgment awarded against Reech the judgment against him must stand.
In view of the reasons hereinabove set forth, the judgment of the trial court must be reversed insofar as it condemns defendant State Farm.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from is reversed insofar as it adversely affects defendant State Farm Mutual Automobile Insurance Company and affirmed as to defendant Prosper Reech.
Reversed in part, affirmed in part and rendered.