YARRUT, Judge.
Plaintiffs sued for damages resulting from a collision between Plaintiff (Ca-sano’s) car with a Pontiac automobile driven by Defendant, Lonnie Cook, on June 2, 1961, about 5:00 p. m., at the intersection of Hamilton St. and Airline Highway in Orleans Parish. Cook’s automobile crashed into the rear of an automobile, driven by Casano, who had as his guest Plaintiff Ruello.
Rurall J. Cook, owner of the Pontiac car, and Lonnie Cook, who drove it at the time of the accident, were made parties-Defendant, along with the liability insurers of the Pontiac and another car owned by the Cooks.
Judgment was rendered dismissing Defendant, Rurall J. Cook, on exception of no right or cause of action. On the merits, judgment was rendered in favor of Maren Ruello for $1550.00, and in favor of Peter Casano for $1777.89 against the remaining Defendants, jointly and in solido, with legal interest and costs. From this judgment, Defendant liability insurers, Peerless Insurance Company and Employers’ Liability Assurance Corporation, Ltd., have appealed.
Neither Appellant has contested the liability of Lonnie Cook in the accident, the facts indicating clearly that his negligence caused the collision. The sole issue raised on appeal is whether the policies of Defendant insurers afford coverage to Lonnie Cook in this accident. The following are the established facts:
*618 Lonnie Cook and his wife, Rural!,. owned two cars, a 1959 Triumph, registered in the name of Lonnie Cook, and a 1960 Pontiac, registered in both names. In November 1960, the Cooks jointly obtained a policy-covering both cars from Peerless Insurance Company. In December 1960, Peerless became aware, for the first time, that Lonnie Cook had been convicted of drunken driving in October of that year. Peerless then notified Lonnie that it would cancel the policy on the “Triumph” and “Pontiac.” A solution was reached whereby coverage on the “Triumph” was cancelled, but coverage on the “Pontiac” continued only under Rurall Cook’s name, in furtherance of which an endorsement was attached to the policy excluding coverage if Lonnie drove the “Pontiac.”
Subsequently, through the Louisiana Assigned Risk Plan, Lonnie obtained insurance on his “Triumph” with Employers’ Liability Assurance Corporation, Ltd., !which limited coverage to the automobile described in the policy, i. e., the “Tri,umph.” Both policies were in effect at the .time of the accident.
Peerless denies liability because its endorsement denies coverage on the “Pontiac” when Lonnie Cook is driving. Employers’ denies liability because its policy limits coverage to the “Triumph” described therein.
The language of the policies, in the light o.f our jurisprudence on the subject, leads to the inevitable conclusion that neither policy affords coverage to Cook under the circumstances of this accident.
The Peerless policy endorsement specifically denies coverage when Lonnie is driving the “Pontiac.” Since the evidence is uncontested that Lonnie was driving the “Pontiac” at the time of the collision, he is not covered under that policy.
The district judge concluded that “Peerless” was liable because there was no consideration for the endorsement on its policy, as there was no reduction in premium allowed therefor.
However, an amendment without premium reduction does not spell want of consideration for a policy change. That “Peerless” could legally cancel the entire policy, unless the insured agreed to the endorsement, was sufficient consideration. Additional consideration to Rurall Cook was the retention of the medical payments the policy afforded her, which coverage was not available to her if forced to insure through the Louisiana Assigned Risk Plan. These advantages were consideration for the limiting endorsement, even in the absence of reduction in premium. The agent for “Peerless” had explained the situation to both Rurall and Lonnie Cook before the ■endorsement was agreed to.
The majority rule in other jurisdictions ■is that an insurer’s agreement not to exer-eise its right to cancel is, alone, sufficient ■consideration for limiting endorsement mutually agreed between insurer and insured. 52 A.L.R.2d 826.
Further, as all policy contracts and premium rates covering liability insurance are fixed by the Casualty and Surety Division •of the Louisiana Insurance Rating 'Commission, under 15A LSA-R.S. 22:1406 et •seq., insurer was not at liberty to make any premium change without the approval of the Casualty and Surety Division. Any change in the premium would have been illegal. ■
The Employers’ policy contains the following language in a special endorsement:
“ ‘Owned Automobile’ means
“(a) a private passenger, farm or utility automobile described in the policy,
* ⅜ *
“and includes a temporary substitute automobile.”
This special endorsement is required by the Casualty and Surety Division of the Louisiana Insurance Rating Commission in family policies in which all owned automobiles are not to be insured. ’ The Louisiana Supreme Court, in Indiana Lumber *619 mens Mutual Insurance Company v. Russell, 243 La. 189, 142 So.2d 391, held that coverage is afforded to all owned cars unless the special endorsement is included in the policy.
The District Court held, however, that Lonnie Cook was covered because he was operating the “Pontiac” as “temporary substitute automobile.” “Temporary substitute automobile” is defined in the policy'as an automobile not owned by the named insured, and used temporarily when the owned automobile is withdrawn from normal use. The Court reasoned that since “owned automobile” is the automobile described in the policy, the “Pontiac,” not being described therein, was a non-owned automobile in keeping with the definition of “temporary substitute automobile.”
To so interpret the policy, however, is to do violence to the obvious purpose of the special endorsement. The whole purpose of the endorsement defining “owned automobile” as the automobile described in the policy, is to limit protection under the policy to one car, rather than all the cars owned by the family. Our jurisprudence is that all cars in the family are covered, unless there is a limiting endorsement to the policy. LeJeune v. State Farm Mutual Automobile Insurance Co., La.App., 107 So.2d 509; Indiana Lumbermens Mutual Insurance Company v. Russell, supra.
If “temporary substitute automobile” is interpreted to include other cars owned by the family, but not described in the policy, the purpose of the endorsement would b.e defeated since, what is excluded by the first part of the endorsement would be revived under “temporary substitute automobile.” The endorsement would thereby be rendered meaningless, and would neither add to nor subtract from the policy.
That the phrase .“temporary substitute automobile” is not meant to include other automobiles belonging to the insured is evidenced by the language of the court in Fontenot v. State Farm Mutual Insurance Co., La.App., 119 So.2d 588. In discussing .the change in definition of “temporary substitute automobile” brought about by addition of the words “not owned by the insured” thereto, the court stated:
“This revision, of course, eliminated from coverage a temporary substitute automobile belonging to the named insured * * *.”
See also DeMarco v. Lumbermens Mutual Casualty Co., La.App., 153 So.2d 594.
The cases are legion that an insurance policy, like any other contract, is subject to the general rules of the Civil Code for interpretation of agreements. The purpose is to effectuate the contract if possible. The language used in a policy should be construed so as to effectuate and not defeat that language. LSA-C.C. Art. 1951; Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9; Perrodin v. Thibodeaux, La.App., 191 So. 148; Parks v. Hall, 189 La. 849, 181 So. 191, mandate conformed to La.App., 182 So. 347. Further, LSA-C.C. Art. 1950, provides:
“When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties rather, than to adhere to the literal sense of the terms.”
The interpretation given the language in this policy by the District Court would defeat the intention of the parties by giving no effect at all to the obvious purpose of the special endorsement.
We hold that the only reasonable and intended interpretation of coverage under the special endorsement that will effectuate the purpose of the endorsement, is that Lonnie Cook was not covered at the time of the accident, since he was not driving a car described in the policy or a temporary substitute car.
The judgment of the District Court against Defendants, Peerless Insurance *620 Company and Employers’ Liability Assurance Corporation, Ltd., is reversed and suit against them dismissed; and affirmed as to Lonnie Cook; the latter to pay all costs in both courts.
Judgment reversed in part; affirmed in part.