**Hazel E. COURTRIGHT and Leslie Courtright, Plaintiffs,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**GOVERNMENT EMPLOYEES INSUR-ANCE COMPANY, Third-Party Defendant.**

**Civ. A. No. 66-C-47.**

United States District Court
D. Colorado.

Oct. 30, 1967.

**490**

Kripke, Hoffman & Carrigan, by Daniel S. Hoffman, Denver, Colo., for plaintiffs.

Lawrence M. Henry, U. S. Atty., by Robert E. Long, Asst. U. S. Atty., Denver, Colo., for defendant and third-party plaintiff.

White & Steele, by Lowell White, Denver, Colo., for third-party defendant.

### MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Plaintiff Hazel E. Courtright seeks to recover damages for personal injuries and plaintiff Leslie Courtright seeks damages for loss of his wife's society and services as a result of such injuries; the action is brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2671 et seq. Plaintiffs contend that one Alfred Pittman, while acting within the course and scope of his employment with the United States Army and the United States of America, negligently drove his vehicle into the rear of the vehicle driven by the plaintiff Hazel E. Courtright, and that as a direct and proximate result of such negligence she sustained severe bodily injuries, incurred medical expense and endured pain and suffering. The Court has previously ruled that at the time of the accident Alfred Pittman was driving his vehicle under circumstances which made the United States responsible for his acts as a service man who was then in the process of changing duty stations under official government orders. See Courtright v. Pittman, 264 F.Supp. 114 (D. Colo.1967).

Alfred Pittman was originally named as a defendant and the action against him has since been dismissed. The defendant United States of America as third-party plaintiff filed its third-party complaint against Government Employees Insurance Company as third-party defendant, claiming that at the time of the accident in question Pittman had in effect an insurance policy with the third-party defendant under the terms of which policy third-party defendant would be responsible for all damages occasioned to all persons or property as a result of the fault or negligence of Alfred Pittman while operating his vehicle. Third-party defendant contends that at the time of the accident in question there was in effect an endorsement to the policy which excluded the third-party plaintiff from coverage under the policy.

The pertinent facts surrounding the accident are as follows: On October 24, 1964 the plaintiffs were proceeding in separate vehicles from their home in Denver, Colorado, to Santa Fe, New Mexico, where plaintiff Leslie Courtright had employment; he was driving a pick-up truck and Mrs. Courtright was following in a 1959 Cadillac DeVille sedan automobile. There were no other occupants in either car. On the same date Alfred Pittman, his wife and four children were traveling south on U. S. Highway 85–87 to Colorado Springs, Colorado, where his new duty station, Fort Carson, is located. Highway 85–87 between Denver and Colorado Springs is a divided highway with two driving lanes going south and two going north with a median strip in between. At a point approximately eight miles south of Castle Rock, Colorado, plaintiff Leslie Courtright drove his pick-up on to the right shoulder of the southbound lane; plaintiff Hazel Courtright promptly drove her vehicle toward her husband's pick-up. When she was nearly off the

pavement on to the shoulder and about two or three car lengths behind the pick-up, her vehicle was struck on the right rear by the Pittman vehicle. She turned her steering wheel to the left to avoid running into her husband's pick-up, and her vehicle then proceeded in a southeasterly direction across the two southbound lanes, the median strip and on to the right lane of the two northbound traffic lanes, where it came to a stop. While crossing the left southbound lane her car struck the right dual wheels of a trailer attached to a tractor. The front end of the Cadillac was severely damaged and the dual wheels of the trailer were slightly damaged.

Immediately prior to the impact between the Pittman and Courtright vehicles the Pittman vehicle was a short distance behind the Courtright vehicle, traveling at a speed estimated by Pittman to be approximately thirty-five miles per hour; the physical facts appearing after the accident suggest that he likely was going at a much higher speed. The tractor and trailer were behind the Pittman vehicle in the left southbound lane. Pittman intended to pass plaintiff's vehicle and steered his car to the left to get into the passing lane. As he was moving into the passing lane the truck, proceeding in the same direction and intending to pass Pittman's vehicle, sounded his horn and Pittman then swung abruptly to the right and eventually into the rear end of Mrs. Courtright's vehicle; her car was still moving at the time of impact. Pittman had not seen the truck prior to the sounding of its horn. The speed of the truck at the time it was passing the Pittman car was approximately sixty miles per hour. Prior to impact, Pittman's vehicle left 183 feet of skid marks on the pavement.

It seems clear to the Court that Alfred Pittman was negligent in failing to use his rear view mirror or other means and thereby observe the truck which was rapidly approaching him on the inside lane. Also, Pittman failed to use his turn signal or to give a hand signal to indicate to the drivers of oncoming vehicles, behind his car, his intent to move to the left onto the inside lane. He was further negligent in not having his vehicle under control at the time the truck was starting to pass so as to avoid hitting other vehicles rightfully in the proper lane or on the road shoulder. We find his negligence to be a proximate cause of the resulting injuries to plaintiff Hazel Courtright.

Mrs. Courtright was able to get out of her vehicle and to walk immediately after the accident; she did not think she had been seriously injured. After the accident was investigated by the state patrolmen she proceeded with her husband in the pick-up to Canon City, Colorado, where they had planned to spend the night with her sister. After her arrival at Canon City she encountered pain, stiffness in her neck and right shoulder; she consulted the doctor there the following morning who procured X-rays which disclosed no fractures. A Morris collar was prescribed and she continued on to Santa Fe, New Mexico, with her husband. Shortly after her arrival there she began to have pain in her lower back. She consulted a doctor who recommended physical therapy and traction, which were employed. She returned to Denver in mid-December and in January of 1965 consulted an orthopedic surgeon who has treated her from time to time since that date. Additional X-rays were taken in November 1964 and January 1965 and no fractures appeared in any of such X-rays. There were some spurs noted at the front margin of the fifth cervical vertebrae but these preceded the accident.

At the time of trial plaintiff Hazel Courtright was fifty-three years of age and had a life expectancy of approximately twenty years. She had had diabetes for approximately thirty years; as a result of her diabetes she suffered some diabetic neuritis. She also suffered from bursitis in her right shoulder. This bursitis preceded the accident. Mrs. Courtright still has some pain in her neck and also in her lower back. Some of the lower back pain is attributa-

ble to diabetic neuritis. She receives some relief from physical therapy and medication. Prior to the accident she was able to do and did most of her own housework, but since the accident she has had to have help on an average of two days per month. Before the accident her main recreational activity was square dancing and since the accident she has been able to continue that activity. Mrs. Courtright has expended the sum of $1,-136.01 for medical treatment, X-rays, physical therapy and medication. Her medical expenses in the future for treating the injuries caused by this accident are expected to be approximately $150.00 per year and her condition is expected to remain static.

■ We find that plaintiff Hazel Courtright is entitled to $1,136.01 as special damages for out-of-pocket expenses incurred to date, to $3,000.00 for medical expenses, including therapy, drugs, etc., which may reasonably be anticipated in the future, and to $1,500.00 for domestic help she must now periodically employ. It is the Court's opinion she be awarded the sum of $2,500.00 for the pain and suffering she has endured up to this time and which she can reasonably be expected to endure in the future as a result of the accident. She is entitled to a total judgment of $8,136.01.

■ Plaintiff Leslie Courtright offered no evidence whatever of the alleged loss of his wife's society and services. Apparently the claim was abandoned. He is therefore entitled to no relief, and his claim will be dismissed.

Whether the third-party plaintiff United States may recover from the third-party defendant Government Employees Insurance Company under the policy is a legal issue to be decided on the Agreed Statement of Facts submitted by counsel and evidence presented at trial. The statement indicates that Pittman held automobile liability policy No. 463–80–00 from April 21, 1961 to June 11, 1965, except for the period between July 1 and October 4, 1963, when it was canceled for non-payment of the premium. At the time of the accident this policy was in full force and effect. The third-party defendant, however, contends that under the provisions of an endorsement sent to Pittman September 11, 1964, no coverage is afforded the United States or any of its agencies. The endorsement, captioned A–32, was attached to the policy which was to cover the period October 4, 1964 to October 4, 1965. It provides in substance as follows:

It is agreed that the policy does not apply under the Liability Coverage for Bodily Injury or Property Damage to the following insureds: 1. The United States of America or any of its Agencies. 2. Any person, including the named insured, if protection is afforded such persons under the provisions of the Federal Tort Claims Act.

The third-party plaintiff contends that the endorsement was not valid because mutuality of understanding between the parties and consideration for the change in the contract were lacking.

It is clear that if the endorsement was invalid the United States is entitled to relief under the policy as an additional insured. See United States v. Myers, 363 F.2d 615 (5th Cir. 1966); Taggert v. United States, 262 F.Supp. 572 (M.D.Pa. 1967). But, if the endorsement is valid there can be no recovery by the United States.

On August 22, 1964 the third-party defendant mailed to Alfred Pittman a form seeking information to determine whether a policy of insurance should be issued to cover the period beginning October 4, 1964. This form was signed and mailed by Pittman on August 28, 1964 to the third-party defendant. On September 11, 1964 the third-party defendant mailed to Alfred Pittman a printed family automobile policy of insurance. This policy bore the same identification number as the previous policies and was to become effective for the period October 4, 1964 to October 4, 1965. The annual premium of $33.55 was the same amount as that charged for the previous year. Attached to this policy was the endorsement, captioned A–32. The policy of insurance

with the endorsement and notice of annual premium remained in the possession of Alfred Pittman. Thus there was no reduction of the premium due to the change in the insurance contract. The fact that the insurance company would have canceled the policy had the endorsement not been accepted was never communicated to Mr. Pittman, the named insured. There is no showing that he was ever aware of the effect or meaning of the amendment.

■ In considering the identical issue now before us, two other courts have recently held that an automobile liability insurer cannot be excused from extending coverage to the United States under an omnibus clause of the policy on the basis of an endorsement where there has been no mutuality of understanding between the parties and where no consideration has been paid to the insured for the change in the policy as expressed in the endorsement. United States v. National Insurance Underwriters, 266 F. Supp. 636 (D.Minn.1967); Engle v. United States, 261 F.Supp. 93 (W.D.Ark. 1966). We agree with those decisions. It appears to be most equitable that an insurance company, with its superior bargaining power, should be required to clearly inform an insured and pay consideration for any modification of the insurance contract.

■ The third-party defendant argues that when the policy containing the endorsement went into effect on October 4, 1964, it was a new contract, and if the endorsement had not been accepted by the insured the company would have canceled the policy. They therefore contend the forbearance to cancel the contract was consideration for the modification. We reject this claim. In Engle v. United States, supra, the Court stated

It is argued that the mailing of the alleged endorsement for attachment to the original policy that was issued on December 28, 1954, constituted a new contract. The court agrees that the renewal of the policy every six months constituted a separate and distinct contract for the period of time covered by the renewal, but it constituted a contract with the same terms and conditions as those contained in the policy which it renewed. See Wackerle v. Pacific Employers Ins. Co. (8th Cir. 1955), 219 F.2d 1, 52 A.L.R.2d 814.

In United States v. National Insurance Underwriters, supra, the Court said

Where the premium has not been reduced and the intent to cancel is uncommunicated to the named insured, forbearance to cancel cannot be considered adequate consideration. [citing cases]

We find that since there was no mutuality of understanding concerning the endorsement and no reduction in premium or other consideration for the modification of the policy, the endorsement is invalid and the terms of the original policy were in full force and effect. Therefore, the third-party plaintiff may recover the damages which it pays to plaintiff from the third-party defendant. It is therefore

Ordered

1. That the claim and cause of action of plaintiff Leslie Courtright be dismissed.

2. That plaintiff Hazel Courtright have judgment against defendant United States in the amount of $8,136.01.

3. That the defendant and third-party plaintiff have judgment against the third-party defendant in the amount of $8,136.01.

This memorandum and opinion shall constitute the Court's findings of fact and conclusions of law in conformance with Rule 52, Rules of Civil Procedure. Plaintiff and third-party plaintiff will promptly submit an appropriate form of judgment.