Shafer, Gilliland, Davis, Bunton & McCollum, W. O. Shafer, Ray Stoker, Jr., Odessa, for appellees.

The TRAVELERS INDEMNITY COMPANY et al., Appellants,

v.

W. T. EDWARDS, Jr., et al., Appellees.

No. 6054.

Court of Civil Appeals of Texas, El Paso.

Feb. 4, 1970.

Rehearing Denied March 4, 1970.

OPINION

WARD, Justice.

This is an appeal from the judgment of the trial court, sitting without a jury, holding The Travelers Indemnity Company and Mission Insurance Company provided coverage under the terms of automobile liability insurance policies issued to Norman Eugene McVean, insuring him and "any other person using such automobile with the per-

mission of the named insured, provided his actual operation (or if he is not operating) his actual use thereof is within the scope of such permission". The policies were issued on July 28, 1965, the terms of the policies being for one year, and the full premiums were paid at that time, The Travelers Indemnity Company policy affording the primary coverage and Mission Insurance Company furnishing certain excess coverage only if Travelers became liable.

The case was submitted to the trial court by an agreed statement of facts as provided by Rule 263, Texas Rules of Civil Procedure. On December 17, 1965 the insured was returning for Christmas holidays to his home in Odessa from Southern Methodist University, where he was a student, and permitted another student, W. T. Edwards, III, to drive his automobile. An accident occurred when the McVean automobile struck another vehicle, causing serious injuries and two deaths to the occupants of the other car, Norman Eugene McVean also being one of the victims. Claims arising out of that accident were settled on behalf of the driver, W. T. Edwards, III, for $114,297.50, and on his behalf the present suit was brought to recover these sums from the two insurance companies, who are the present appellants.

The primary issue involved in the case concerns the validity of a Student Restrictive Endorsement issued by Travelers to form a part of its policy, which provided that the coverage provided by its policy did not extend to any student other than the named insured, Norman Eugene McVean. The facts are that when the policies were issued on July 28, 1965 the Student's Restrictive Endorsement was not attached to the Travelers policy. Upon receipt of a daily report reflecting issuance of the policy, an underwriter for the Travelers, by a memorandum dated August 6, 1965, requested that the local issuing agent in Odessa have the insured sign a Student Restrictive Endorsement Form 208. A second request for such an endorsement was sent to the local agent on September

10, 1965 and on October 14, 1965 the local agent sent the Student Restrictive Endorsement forms to L. T. Miller, Jr., an officer of the company owned by the father of Norman Eugene McVean, with a request that the forms be signed and returned. On October 17th a third request was sent by Travelers to the local agent inquiring about the endorsement. On October 19, 1965 L. T. Miller, Jr. advised the local agent that Norman Eugene McVean would not be home until the Thanksgiving holidays and would then sign the requested endorsement forms. On November 3rd, the local agent wrote the underwriters for Travelers that the endorsement would be signed and returned after the Thanksgiving holdiays. Norman Eugene McVean did return to his home in Odessa during the Thanksgiving holidays and did sign the Student Restrictive Endorsement forms. On November 29th, L. T. Miller, Jr. wrote a letter to the local insurance agency advising that the forms had been signed and purported to send them in the letter, but, due to an error, the endorsements were not actually enclosed in the letter. The endorsements remained with L. T. Miller until picked up by a representative of the Travelers a few days after the accident and death of Norman Eugene McVean.

The Student Restrictive Endorsement forms provide that they shall be effective as of July 28, 1965, and states the following:

"This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

"1. In consideration of the premium at which this policy is written, it is agreed that no insurance is afforded under this policy to any student other than the one named below."

Norman Eugene McVean is the only student named in the endorsement. It was agreed that no money was paid to Norman Eugene McVean for the execution of the endorsement and that the premium origi-

nally paid upon the issuance of the policy was in the same amount the premium would have been had the endorsement been attached to the policy at the time the policy was issued on July 28, 1965. Both the Travelers Indemnity Company policy and the Mission Insurance Company contained provisions giving the companies an absolute right of cancellation upon ten days written notice of cancellation with return to the insured of unearned premiums. It was also stipulated that it was not the normal practice of the Travelers Indemnity Company to afford automobile coverage for any risk involving a student operator without requiring that the Student Restrictive Endorsement Form be attached and made a part of such policy; however, as to this portion of the stipulation regarding normal company practice, it was not stipulated that this evidence regarding normal practice was admissible in evidence, the appellees reserving the right to make objections to the court's consideration of this part of the tendered evidence.

The appellee W. T. Edwards, III, as third-party beneficiary under the two policies as originally issued on July 28, 1965, contends that the Student Restrictive Endorsements as finally executed by Norman Eugene McVean are without consideration, and, therefore, ineffectual and not binding on him. The appellees contend that the policies of insurance were contracts for one year from July 28, 1965 for which the entire premium had been paid in advance, and that the term thereof could not be altered or changed except through another contract supported by valuable consideration.

The position of the appellants, as expressed by their first five points, is to the effect that there was clearly a meeting of minds of the parties, as there can be no questions but that Travelers, by requesting such endorsement, and McVean, by signing the endorsement, intended to limit the liability on the insured vehicle so as not to cover accidents while the car was being driven by any student other than Norman

Eugene McVean; that as the appellants had the right, on ten days' notice to the insured, to cancel the policies and that when it was determined that the insured would execute the endorsements, no further action had to be taken by the appellants, and therefore there was ample consideration for the execution of the endorsements. Further, the endorsement recited that it was issued in consideration of the premium at which the policy was written, and the undisputed evidence established as a matter of law that the premium paid was in the amount the premium would have been had the endorsement been attached at the time the policies were issued.

Decisions on the question are annotated in 52 A.L.R.2d 826, wherein it is stated:

"The issue under annotation—whether consideration is necessary for a valid modification of an insurance policy as to the risk covered thereby, and if so, what constitutes a sufficient consideration for such a modification—is a narrow one. The small number of cases touching upon this issue are agreed on the first aspect of the question; it is uniformly held, at least in the absence of facts showing an estoppel, that consideration is necessary for the valid modification of the coverage provisions of an insurance policy, whether the effect of the modification is to extend or limit the risks against which the insurance affords protection."

The cases in general consider the right of the insurer to cancel the policy in reaching the decision under the particular facts presented to them as to whether or not there was consideration in the transaction.

The appellants rely on cases such as Massachusetts Bonding & Insurance Company v. Florence, 216 S.W. 471, decided by this court in 1919, where the insured executed an instrument releasing the insurer from liability for disability due wholly or in part to hernia or rupture. Following the execution of the release, the insured

suffered a disability from hernia and sought recovery on the policy. This court upheld the defense of release, stating that a valuable consideration was furnished for the execution of the release by the waiver of the insurer of its legal right to cancel the policy upon notice. This court pointed out that prior to the execution of the release, the insurer had advised the insured that it would cancel unless he would waive his right to recover for any illness he might suffer from hernia or rupture, and the agent of the company testified he would not have permitted the health policy to remain in force unless the insured had given the release. A case with similar facts and with the same conclusion is that of Federal Life & Casualty Co. v. Robinson, 28 Ala.App. 1, 178 So. 549.

Cases involving the execution of restrictive endorsements and relied on by the appellants are Casano v. Cook, 157 So.2d 616 (La.Ct. of App.1963); Ellis v. Southern Farm Bureau Casualty Ins. Co., 233 Miss. 840, 103 So.2d 357 (1958); Johnson v. Central National Ins. Co. of Omaha, Neb. 210 Tenn. 24, 356 S.W.2d 277 (1962); State Farm Mutual Automobile Ins. Co. v. Pierce, 182 Neb. 805, 157 N.W.2d 399 (Neb.Sup.Ct.1968). In each of these cases an undesirable risk was called to the attention of the insurer after the execution of the policy, and the insurer then determined to exercise its right of cancellation or termination of the policy unless the unwanted risk was eliminated from the policy. In each case the right of cancellation was called to the attention of the insured and in each case the release or restrictive endorsement was obtained by the agreement on the part of the insurer that it would thereafter not exercise its right of cancellation or termination. We have no quarrel with the general proposition that forbearance from exercising a right of cancellation or termination communicated to the insured will support a reduction in coverage.

This merely points up the difficulty facing the appellants in the present case.

Here we have no intent to cancel communicated to the named insured and, even more forceful, we do not even have an uncommunicated intent to cancel. The record before us is completely barren of any evidence that Travelers at any time ever intended to exercise its right of cancellation or even contemplated doing so. As argued by the appellees, it was just as reasonable to assume that Travelers would have valued the large business account so much that it would have permitted the policy to remain in force without the endorsement. The decision is a difficult one, but we hold that there was no consideration for the execution of the endorsement.

The problem was presented in Maryland Casualty Co. v. First Nat. Bank, 82 F.2d 465 (5th Cir.Tex.1936), where the policy insured the bank against loss by robbery. After the policy had been in effect for thirty days, the insurer's agent, as an entirely new matter and not pursuant to any agreement made when the policy was written, secured a rider for attachment to the policy which reduced the insurer's liability to fifteen per cent of all money taken while the safe was not time-locked. In writing to its agent enclosing the rider, the insurer said nothing about canceling the policy if the rider was not accepted, but merely that it was a new company requirement to have the rider on all bank policies in Texas. The court there stated the following:

"* * * We think the District Judge was right in holding that there was no consideration for attaching the rider. Nothing was said to appellee about canceling the policy. After the rider was executed, the privilege of cancellation still remained. Nothing whatever was offered or given to appellee to induce the change * * *

"We think it plain that there was no consideration and that the rider fails as an agreement". (Citing among other authorities, Stone v. Morrison & Powers, 298 S.W. 538, Tex.Com.App. 1927).

The last cited case is merely for the general proposition that under general principles of contract law, the modification of an existing contract imposing heavier burdens on one of the contracting parties must be supported by an additional consideration.

As authority for that general line of thought, the case of Wilkins v. Carter, 84 Tex. 438, 19 S.W. 997 (Tex.1892) is cited, where the Supreme Court acknowledged that forbearance by the creditor to sue is not consideration, unless based upon an agreement to that effect. "The mere omission of the creditor to sue is not sufficient, in the absence of such agreement, for in such case he may proceed at his pleasure."

Federal cases on the subject have been presented where federal employees, usually mail carriers, have obtained insurance where the policy, at the time of issue, contained an omnibus clause extending coverage to anyone responsible for the operation of the vehicle. Later an endorsement is issued and delivered to the assured seeking to exclude the United States government from any coverage under the particular policy without any explanation. In each case the government was permitted recovery under the terms of the original policy, the endorsement being held invalid as being issued without consideration. Southern Farm Bureau Casualty Ins. Co. v. United States, 395 F.2d 176 (8 Cir.Ark. 1968); Courtright v. United States, 276 F. Supp. 489 (D.Colo.1967); United States v. National Insurance Underwriters, 266 F. Supp. 636 (D.Minn.1967); Engle v. United States, 261 F.Supp. 93 (W.D.Ark.1966). The court, in Southern Farm Bureau Casualty Co. supra, makes the clear distinction between this situation and the one before this court in Massachusetts Bonding & Ins. Co., supra, and approves the rule that where the insurance company has asserted its intention to cancel unless risk is limited, an agreement not to cancel a cancelable insurance policy is sufficient consideration for a limiting endorsement, by stating:

"Conceivably under a factual situation where an insurance company intends to cancel a policy because of increased exposure for any reason and clearly would have canceled unless an increased premium were paid or a limiting endorsement accepted, the relinquishment of the right to cancel would support either an increased premium or a limiting endorsement reducing the risk. But mere forbearance in exercising a right to cancel is not sufficient consideration—this always could be used as an after-the-fact consideration when a loss occurred. If the insurance company desires to cancel, it should so state in clear terms and proceed accordingly. The record here is barren of any evidence that Southern intended to exercise its right of cancellation."

The appellants argue that where forbearance actually occurs, the court should imply an agreement to forbear. 74 A.L.R. 293. However, we decline to extend that doctrine to the facts now before us. The insurance company, with its superior bargaining power, should inform the insured of its intention and permit the insurer an intelligent choice. We hold, therefore, that there was no consideration for the modification of the policy and the endorsement is invalid and the terms of the original policy were in full force and effect. The appellees may therefore recover their damages. The appellants' first five points are overruled.

The trial court entered judgment for the appellees providing that they "do have and recover of and from the defendants the sum of $121,231.25". In the accident of December 17, 1965, the McVean car struck an automobile being driven by Mrs. Claude Wilson. Settlement of the claims for the occupants of the Wilson car were as follows: $100,000.00 for the injuries to Mrs. Claude Wilson; $10,000.00 for the death of her minor daughter, Mary Jane Wilson;

$3,000.00 for the death of Mrs. O. L. Stamps; and $11,297.50 for damages to the Wilson car. The Travelers Indemnity Company policy, affording primary coverage, limited its liability to the sum of $25,000.00 per person in any one accident and $50,000.00 for any one occurrence or accident, plus the sum of $10,000.00 for property damage. The Mission Insurance Company policy contained a limit of liability in the amount of $75,000.00 for each person in excess of the underlying limits of $25,000.00 for each person as provided by the Travelers policy. All parties conceded that the judgment of the trial court as entered is defective and must be reformed. See The Law of Liability Insurance, Roland H. Long, Vol. 1, sections 2.08 and 2.09, pp. 2–16; 2–20; Blashfield Automobile Law and Practice, 3rd Ed., Vol. 8, section 345.3, p. 461. The maximum liability of the Travelers would be $25,000.00 on the claim of Ruth Wilson, $10,000.00 on the claim of Mary Jane Wilson, $3,000.00 on the claim of Mrs. O. L. Stamps, and $1,297.50 for the property damage, or a total sum of $39,297.50. The only amount that involves the Mission Insurance Company policy is in regard to the sum of $100,000.00 on the claim of Ruth G. Wilson, and it is liable only to the extent of $75,000.00 on this claim. The trial court's judgment will be reformed as stated above.

◼ Appellants complain of the award by the trial court of interest on various sums at various dates preceding the date of judgment. No suit was ever filed on behalf of any of the claimants of the Mrs. Claude Wilson car, the claims being settled on behalf of W. T. Edwards, III. The trial court determined the dates from which interest began from the dates when the answers were filed in the present suit where the appellants denied liability on the present insurance policies before the court. The appellees cite fire loss cases where the insured has sustained a loss by the fire itself as supporting the proposition that where the insuror denies liability and the assured establishes the insuror's liability,

interest will begin from the date of the denial of liability, such as the filing of an answer. Lloyds v. Hale, 405 S.W.2d 639 (Tex.Civ.App. Amarillo 1966). But in the case before us, the appellees sustained no loss until the amounts were paid on the claims or the settlement agreements were executed. We have examined the stipulation of facts carefully and nowhere are the dates of settlement or payment specified, other than by the statement that "they were paid", but the stipulation is only entered into and executed at the date of trial. In view of this state of the record, the appellants' points regarding the award of interest prior to judgment are sustained.

The Travelers Indemnity Company policy provides that the insurer will pay in addition to the applicable limits of its liability:

"(a). All expenses incurred by the company, all costs taxed against the insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;"

The Mission policy extends coverage against "excess loss", but such policy does not provide coverage for interest on judgments; to the contrary, the policy specifically excludes coverage for "all cost" including "interest on judgments". Appellees conceded that Mission cannot be held liable for interest on the amount of the judgment from date of entry. Williams v. United Services Automobile Assn., 250 F. Supp. 502 (Miss., W.D.1965), rev'd on other grounds, Maryland Casualty Co. v. Williams, 377 F.2d 389, 5 Cir., and the trial judgment will be so reformed, awarding no interest from and after date of judgment against Mission. Travelers Indemnity Company, on the other hand, is obligated to pay interest on the entire judgment until its part of the same has been paid, ten-

dered or deposited in court. Plasky v. Gulf Insurance Company, 160 Tex. 612, 335 S.W.2d 581 (1960); Baucum v. Great American Insurance Co. of New York, 370 S.W.2d 863 (Tex.1963).

The trial court's judgment is therefore reformed, that appellees recover of and from appellant Travelers Indemnity Company the sum of $39,297.50, and that the appellees recover of and from appellant Mission Insurance Company the sum of $75,000.00, and that appellees recover of and from appellant Travelers Indemnity Company interest at the rate of six per cent per annum on the sum of $114,297.50 from March 20, 1969, the date of the trial court's judgment, until it has paid or tendered or deposited into court that part of the judgment which does not exceed that company's liability thereon, being $39,297.-50.

As so reformed, the judgment of the trial court is affirmed.