**Christine O. ENGLE, Individually and as Mother and Next Friend of Linda D. Youngs, Susan E. Engle and Alma L. Engle, Minors, Plaintiffs,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**SOUTHERN FARM BUREAU CASUAL-TY INSURANCE COMPANY, Third-Party Defendant.**

**Civ. A. No. 1014.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

Oct. 10, 1966.

Lane, Muse & Arman, Hot Springs, Ark., for plaintiffs.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for defendant.

Shaver, Tackett & Jones, Texarkana, Ark., for third party defendant.

## OPINION

JOHN E. MILLER, Chief Judge.

This suit was commenced on February 17, 1966, in the Circuit Court of Garland County, Arkansas, by plaintiffs against Mary E. Johnson, also known as Mrs. G. B. Johnson, to recover damages for personal injuries allegedly proximately caused by the negligent operation of an automobile driven by Mary E. Johnson on June 22, 1965. The case was removed from the state court, and the United States was substituted as party defendant under the provisions of 28 U.S.C.A. § 2679. Answer of the defendant, United States, was filed April 21, 1966, and on July 1, 1966, the defendant filed a motion for leave to implead the third party defendant. The motion was granted, and the defendant filed a third party complaint against Southern Farm Bureau Casualty Insurance Company.

Inter alia it was alleged in the third party complaint that Mary E. Johnson, also known as Mrs. G. B. Johnson:

" * * * entered into a contract with said third party defendant whereby the said third party defendant was obligated among other things:

" '1. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages:

" 'Coverage A because of bodily injury sustained by any person, and

" 'Coverage B because of injury to or destruction of property, caused by accident and arising out of the ownership, maintenance or use of the automobile, including loading and unloading thereof.'

"United States of America is an insured under said policy by definition contained therein

" 'Under Coverages A and B, the unqualified word "insured" means the named insured and, if the named insured is an individual, his spouse, and also any person while using the automobile and any person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or spouse or with permission of either.'

"Mrs. G. B. Johnson is the named insured as to said policy.

"Since June 22, 1965, third party defendant has endorsed said policy with an exclusion to exclude the United States of America as person insured."

On July 13 the third party defendant filed its answer and motion to dismiss the third party complaint. In its answer the third party defendant alleged:

"II.

"This third party defendant admits entering into a contract with Mrs. G. B. Johnson, whereby Mrs. Johnson [was] afforded the alleged liability insurance coverage in all instances other than those excluded by the policy or endorsements thereto, the policy being executed on the 28th day of December, 1954. This third party defendant alleges that an endorsement to the policy was issued on or about the 28th day of June, 1964, and made a part of the involved liability policy, effective as of the 28th day of June, 1964, specifically providing that no liability insurance coverage was afforded the United States Government, its agencies, departments or services, subsequent to the 28th day of June, 1964.

"III.

"This third party defendant denies that the United States of America was an insured under the terms of the involved liability insurance policy on the 22nd day of June, 1965, or at any other time subsequent to the 28th day of June, 1964."

In the motion to dismiss the third party defendant alleged that the third party complaint does not state a cause of action against it, and that the third party plaintiff is without authority to institute and prosecute a direct tort action against it, and that even if the third party plaintiff "were not excluded as an insured under the terms of the involved liability in-

surance policy, this third party complaint is premature, and the third party plaintiff would only be permitted to sue this third party defendant upon any judgment growing out of the original tort action."

On August 12, 1966, the third party plaintiff filed a reply to the answer of the third party defendant, in which it was alleged "that even if said third party defendant had prior to June 22, 1965, attempted to endorse or otherwise modify the liability policy with Mrs. G. B. Johnson, said attempted endorsement or modification is void for lack of consideration as no portion of the premium was refunded to Mrs. Johnson nor did any provision in said contract as originally entered authorize reduction of liability coverage."

It was alleged that the provisions concerning cancellation of the policy between the third party defendant and the insured, Mrs. G. B. Johnson, were not invoked prior to June 22, 1965.

Following the filing of the reply by the defendant to the answer and motion to dismiss of the third party defendant, the third party defendant filed the affidavit of Jack Simons, the chief underwriter for the third party defendant. Attached to the affidavit was a letter dated July 1, 1965, from the original defendant, Mrs. G. B. Johnson. The defendant filed a response to the affidavit, together with certain other documents, and on August 25, 1966, the court entered an order in which it reviewed the contentions of the defendant and the third party defendant as disclosed by a pretrial conference held on August 16, 1966, and stated that "there remains a question of fact as to whether the third-party defendant is liable over to the third party plaintiff and that such question cannot be determined on the documents above set forth." (The court had reference to the affidavit of Jack Simons and the alleged endorsement and other papers that had been filed by the third party defendant and by the defendant.) The court therefore ordered "it is necessary to a determination of the question that the parties be prepared to submit such evidence as they may care to offer on the question at a pretrial

hearing, the date of which will be later fixed." The hearing was fixed for September 29, 1966, at which time the defendant and third party plaintiff appeared by Mr. Robert E. Johnson, Assistant U. S. Attorney for the Western District of Arkansas, and the third party defendant appeared by Mr. Boyd Tackett, its attorney.

A hearing was held on the question, at which the parties introduced ore tenus testimony and certain exhibits, from which the court finds that the application for the original policy was dated December 28, 1954, (Third Party Deft. Ex. 3). In the definition of "insured," the policy contains the clause as alleged in the third party complaint, defining the "insured" to be "any person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or spouse or with permission of either." The policy was subject to renewal every six months, at which time a premium was charged by the insurer and paid by the insured.

The third party defendant in support of its motion to dismiss the third party complaint contends that under the provisions of an endorsement, dated January 1, 1964, "no coverage is afforded the United States Government or any of its agencies, departments, or services." The alleged endorsement was introduced as third party defendant's Exhibit 1, and reads as follows:

### "ENDORSEMENT

"Subject to all other terms and conditions of the policy to which this endorsement is attached it is understood and agreed by and between the Company and the Named Assured that

" 'In consideration of the premium at which this policy is written, no coverage is afforded the United States Government or any of its Agencies, Departments, or Services.'

"Nothing herein contained shall alter, vary, waive, or extend any provision or condition of the policy except as herein provided. Attached to and

96

forming part of the policy for which this premium notice applies.

"Effective date of this endorsement January 1, 1964."

On the reverse or back side the following appears:

"Dear Policyholder:

"The Federal Tort Claims Act (Public Law 87–258) effective March 21, 1962 briefly provides that the Government shall be exclusively liable for automobile accidents, if the automobile is on government business at the time of the accident.

"In order to eliminate any duplication of coverage, or confusion in the handling of losses under our policies, we have endorsed your policy to exclude protection for the Government, or any of its agencies.

"This endorsement does not reduce the protection afforded to you as our policyholder.

/s/ Robert W. Owens
Robert W. Owens
Manager"

The chief underwriter, Jack Simons, testified that along with the first premium notice mailed after January 1, 1964, for renewal of the policy as of June 28, 1964, the alleged endorsement was included, and that from January 1, 1964, the United States was not an assured under the terms of the endorsement. The insured, Mrs. G. B. Johnson, testified that she never received the endorsement and knew nothing about it until after the adjuster of the insurer called on her subsequent to the date of the collision between the insured automobile and that being driven by the plaintiff.

Much stress is placed upon a letter written by the insured under date of July 1, 1965, to the insurer, in which she stated that she had misplaced her policy and asked that a duplicate be sent, which was not sent to her, but she did obtain a duplicate by visiting the office of the insurer at Little Rock, Arkansas.

After a full consideration of the testimony and all the attendant circumstances, the court is not convinced that the alleged endorsement was mailed to or received by the insured prior to June 22, 1965, the date of the collision between the automobile driven by the insured and the plaintiff.

On his letter brief the third party defendant stated:

"We will admit that the endorsement could not possibly become effective until received and approved by the insured. When the insured received the endorsement with the premium notice, and subsequently paid the premium, the endorsement became effective.

\* \* \* \* \* \*

"The involved policy had expired and had been renewed at the expiration of two 6-months periods after the endorsement was received by the insured. The insured does not say that she did not receive the endorsement. She merely says that she does not remember seeing it. She couldn't even find her policy, much less the endorsement. Surely the Government does not expect an insurance company to be able to remember each individual occasion that an endorsement was made. This endorsement was sent to every policyholder in the regular course of business. Since the endorsement did not curtail coverage of this insurance, naturally she gave it no thought and misplaced it along with her policy.

"This policy expired on the 28th day of June, 1964. The policy was reinstated by virtue of the insured paying the required premium for an additional six months. She approved the endorsement, received with the premium notice, effective the 28th day of June, 1964, when she paid the premium. This policy again expired on the 28th day of December, 1964, and the insured reinstated the policy by virtue of paying the required premium. At no time did the insured, in obedience to requests of the insurance company, ever divulge that the vehicle was being used at least part time as a commercial vehicle. This accident oc-

curred on the 22nd day of June, 1965, just six days before the policy would have again expired. Now, we are not dealing with an endorsement attached to an existing policy. We are dealing with an endorsement provision of a policy reinstated with the endorsement provision a part of same."

It is true that the policy expired every six months and was renewed by the insured each six months by paying the premium demanded. The third party defendant does not contend that the endorsement was mailed prior to its alleged effective date, January 1, 1964. It is argued that the mailing of the alleged endorsement for attachment to the original policy that was issued on December 28, 1954, constituted a new contract. The court agrees that the renewal of the policy every six months constituted a separate and distinct contract for the period of time covered by the renewal, but it constituted a contract with the same terms and conditions as those contained in the policy which it renewed. See, Wackerle v. Pacific Employers Ins. Co., (8 Cir. 1955) 219 F.2d 1, 52 A.L.R.2d 814. In fact, the alleged endorsement provides:

"Nothing herein contained shall alter, vary, waive, or extend any provision or condition of the policy except as herein provided. Attached to and forming part of the policy for which this premium notice applies."

The statement appearing on the back of the alleged endorsement provides:

"This endorsement does not reduce the protection afforded to you as our policyholder."

Therefore the contention of the third party defendant above set forth is without merit.

The defendant and third party plaintiff contends that even though the endorsement was issued and mailed to the insured, it is ineffective for lack of consideration. The third party defendant makes no contention that there was any reduction in the premium or any consideration paid to the insured, but attempts to justify its action in not doing so by stating that the premium charged was already as low as it was possible to charge, and that the named insured did not divulge that the automobile was being used at least part-time as a commercial vehicle.

The policy of insurance that was under consideration in United States v. Myers, (5 Cir. July 6, 1966) 363 F.2d 615, contained the same definition of additional insured as in the instant case, and the question was whether the United States was entitled to recover as an additional insured under the automobile liability policy issued by the insurance company to Pugh and in force at the time of the accident. The policy defined "insured" to include "any other person or organization legally responsible for the use of (the insured automobile) * * *." The court reviewed practically every case where the question of whether the United States was an additional insured was involved, and in line with the decisions held that the United States was an additional insured. The court also considered the question which the third party defendant raises to the effect that the policy insured primarily pleasure uses of the insured, Mr. Pugh, and would have cost much more had Mr. Pugh specified that he intended to use the automobile for business purposes. The lower court held that this was sufficient to render the prior decisions inapposite since they all dealt with policies specifying the employee's occupation (such as "mail carriers") and provided coverage for business use of the covered automobile. The court, in considering the analysis of the question by the trial court, stated at page 618:

"This analysis is completely wide of the mark. In none of the referenced cases did the court rest its decision on the existence or non-existence of 'business use' coverage. The one court that has specifically considered this point rejected it point blank as irrelevant to the question here presented. Town v. United States, No. 64–577–JWC, S.D. Cal., October 30, 1964. Cf. Percivill v.

98

United States, Civil No. 1454, W.D. Tex., March 1, 1966 [252 F.Supp. 157]. And clearly this is correct. . The 'pleasure-business' argument would, if at all appropriate, go to whether the *accident* here involved was within the coverage of the policy. But no questions are raised in this regard. Thus the court's 'pleasure-business' analysis must be rejected."

In footnote No. 4 appearing at page 619, the court said:

"We cannot improve upon the following statement from the Government's brief, which succinctly summarizes our own views:

" '* * * The issue here is not whether the policy covered the business use of the vehicle by Pugh. As the district court expressly determined, not withstanding the considerations which it emphasized, Pugh himself was insured under the policy when, at the time of the accident, he was driving the vehicle on government business * * *.

" 'The issue, instead, is whether not only Pugh but, in addition, the United States was insured at the time of the accident. This issue, we stress again, necessarily must be resolved in the basis of the omnibus clause, which specifies who,—apart from the named insured—shall be entitled to coverage as an 'additional insured'. And, as we have shown, there can be no question that, while it could have been written to exclude the United States from coverage, the omnibus clause in the present policy was drafted so as plainly to include the United States.

" 'Stated otherwise, the district court failed to perceive that the consideration [on] which it relied could have had a bearing, at most, upon a matter which was not in dispute in this case: viz., whether the policy covered the use which was being made of the Pugh vehicle when the accident occurred. Those considerations manifest-

ly had no relevance to the matter which was in dispute: viz., whether the use of the vehicle being within the coverage of the policy, the United States was entitled to the benefit of that coverage because it came within the omnibus clause definition of "insured".' ' "

In Southern Acid & Sulphur Co. v. Childs, (1945) 207 Ark. 1109, 184 S.W.2d 586, the court quoted with approval from 12 Am.Jur., Sec. 1005:

" 'Moreover, the assent of both parties to a modification is necessary. Such consent is required to vary a contract as much as to make one originally. The mental purpose of one of the parties to a contract cannot change its terms.' "

In 29 Am.Jur., Sec. 336, p. 700, Insurance, the law is stated as follows:

"It is uniformly held, at least in the absence of facts showing an estoppel, that consideration is necessary for the valid modification of the coverage provisions of an insurance policy, whether the effect of the modification is to extend or limit the risks against which the insurance affords protection. A defect in the modification of an insurance policy, resulting from the lack of consideration therefor, is not obviated by a renewal of the policy after the modification."

See, also, Annotation appearing in 52 A.L.R.2d, 826, and the unprinted opinion of U. S. District Judge William R. Collinson of the Eastern and Western Districts of Missouri, dated June 9, 1966, in the case of Kimball v. Pratt et al., 261 F. Supp. 839.

The court is convinced that the contentions of the third party defendant in support of its motion to dismiss the third party complaint of defendant, United States of America, are without merit, and the motion to dismiss should be denied.

An order in accordance with the above is being entered today.