**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 9862.

United States Court of Appeals Tenth Circuit.

Sept. 16, 1968.

Lowell White, Denver, Colo., for appellant.

Robert V. Zener, Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., Lawrence M. Henry, U. S. Atty., and John C. Eldridge, Atty., Dept. of Justice, on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Government Employees Insurance Company (GEICO), a third-party defendant below, appeals from a judgment entered in favor of the United States as a third-party plaintiff in a negligence action originally instituted against one Alfred Pittman, a serviceman in the United States Army. On October 24, 1964, while in the process of changing duty stations, Pittman, an insured of GEICO under an automobile liability insurance policy, was involved in an automobile collision. Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2671 et seq., the United States has become the sole defendant, the action against Pittman having been dismissed.

The defendant, United States, as a third-party plaintiff filed a third-party complaint against GEICO, alleging that at the time of the automobile accident in question, Pittman had in effect an insurance policy under the terms of which GEICO agreed to be responsible for all damages occasioned to all persons as a result of the negligence of Pittman. The third-party defendant asserted that at the time of the accident there was in effect an endorsement to the policy which excluded the United States as an omnibus insured. The lower court thereafter entered a judgment against GEICO in the amount of $8,136.01.[1]

The liability insurance policy in question was initially issued to Pittman to cover the period from April 21, 1961 to April 21, 1962. The basic policy was revived and continued in effect until July 1, 1963 when it was canceled for nonpayment of the premium. On October 4, 1963 the policy was again reinstated and again contained the standard omnibus clause extending coverage to anyone responsible for the operation of the vehicle. Prior to expiration of the policy, GEICO mailed to Pittman a form seeking information to ascertain whether a policy should be issued to cover the period beginning October 4, 1964. The insured having responded in the affirmative GEICO, on September 11, 1964, issued a new policy contract to become effective October 4, 1964. This policy charging the same annual premium, bearing an identical number and containing the same general provisions as the previous policies, had attached separately thereto an endorsement excluding the United States as an additional insured. The cover letter transmitted with the new insurance contract advised the insured to read the new policy carefully.

The district court in a Memorandum Opinion and Order[2] held that the endorsement was void for lack of consideration and mutuality of assent, citing United States v. National Insurance Underwriters, 266 F.Supp. 636 (D.Minn. 1967) and Engle v. United States, 261 F.Supp. 93 (W.D.Ark.1966).

GEICO in seeking reversal contends: (1) that the United States has no standing to bring an action under the policy (not being privy thereto), and (2) that the policy to become effective October 4, 1964 was a separate and distinct contract completely independent of the prior

1. Courtright v. United States, 276 F.Supp. 489 (D.Colo.1967).

2. Courtright v. United States, supra.

policy. The parties assert that the applicable law is either that of the District of Columbia, where the renewal policy was issued, or Alaska, where Pittman received it. Whether this be correct or whether the case is controlled by federal law because of the inapplicability of Erie,[3] is of no moment, for it is agreed that there is no direct authority in point. Consequently, the issue is governed by general case authority.

■ As to whether the United States is a proper party to assert the invalidity of the endorsement, it can be stated, without reaching the issue of whether the modification was void, that the United States had the right to implead GEICO as a third-party defendant under Rule 14 Fed.R.Civ. Procedure.[4] Having this right, it cannot be doubted that the United States had the necessary standing to assert its interpretation of the contract so as to bring it within the protection afforded an omnibus insured. This right to require an interpretation of the contract would also extend to the right to assert the invalidity of a modification thereof.[5]

This brings us then to the question of the status of the new policy, with attached endorsement, as issued October 4, 1964. In searching in vain for sufficient consideration to support the modification of the omnibus clause, the district court apparently failed to appreciate the distinction between this case and the cases relied upon by that court to support its decision. The appellee, in urging So. Farm Bureau Cas. Ins. Co. v. United States, 395 F.2d 176 (8th Cir. 1968), has joined in this misconception of the issue. In the Engle, National Underwriters and So. Farm Bureau cases, the endorsement seeking to modify the omnibus clause was sought to be made effective at a time when the previous policy was in effect. It was then contended that upon the subsequent renewal, the prior modification, although void for lack of consideration at the time it was annexed to the existing policy, had become incorporated into the renewal policy contract. In this factual setting the courts applied the rule that requires consideration to support the modification of an existing contract. In disposing of the contention that the renewal incorporated the void endorsement into the policy, it was stated that a modification defective as a result of lack of consideration therefor would not be revived by a later renewal of the policy.[6] In such a case it may be necessary to consider the lack of consideration as invalidating an attempted modification of an existing policy. However, here the endorsement first became an issue in connection with its submission together with a copy of the new policy contract, at a time when the parties were arranging for coverage to begin upon the expiration of the previous contract. As a result, the question here is not whether there was a valid modification of an existing contract, but rather, whether the modification of the policy was properly incorporated into the new contract. This follows as a result of the fact that although there is a continuity between successive policy contracts, to be discussed later, each renewal is a separate contract and is to be treated as such in this respect.[7] As a result, the crucial issue presented for decision is whether the insured agreed to the endorsement, or stated conversely, what in fact were the terms of the policy as exemplified by the new contract.

■ While the renewal of an insurance policy constitutes a separate con-

3. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938).

4. United States v. Myers, 363 F.2d 615 (5th Cir. 1966).

5. So. Farm Bureau Cas. Ins. Co. v. United States, 395 F.2d 176 (8th Cir. 1968); United States v. National Insurance Underwriters, 266 F.Supp. 636 (D.Minn.1967); and Engle v. United States, 261 F.Supp. 93 (W.D.Ark.1966).

6. So. Farm Bureau v. United States, supra; Engle v. United States, supra; and United States v. National Insurance Underwriters, supra.

7. Id.

tract to be governed by general contract principles,[8] it is the general rule that an insurance company is bound by the greater coverage in an earlier policy where the renewal contract is issued without calling to the insured's attention a reduction in policy coverage.[9] This proposition was set forth, but in different terms, by Judge Phillips, speaking for this court, and indicating that "When a renewal policy is issued, it is presumed, unless a contrary intention appears, that the parties intended to adopt in the renewal policy, the terms, conditions and coverage of the expiring policies."[10]

In this case the insurer, GEICO, transmitted a new policy contract and instructed the insured to carefully read the contract as submitted. This alone is insufficient to call attention to the change in coverage. However, when coupled with the fact that the endorsement excluding the United States was attached as a separate addition to the contract, it becomes apparent that even a casual reading of the mailed material would result in informing the insured of the change.[11] Hence, while it is inequitable to require an insured to search the fine print of each renewal policy, to require that he be aware of a short, separately attached boldly worded modification, seems clearly appropriate.[12]

Even if it be that the insured was not adequately notified of the policy change, an analysis of the reasoning underlying the rule requiring an insured to call attention to policy modifications will demonstrate that the United States still must fail in its attempt to be brought within the terms of the contract. This follows because the theory holding the insurer bound by the prior policy is based on the premise that an insurer who fails to call attention to policy changes is guilty of fraudulent or inequitable conduct or has committed an error, and in either event the insured, who has relied on the assumption that the renewal contract provisions remained unchanged, is entitled to recover as though there had been no modification in the policy coverage.[13]

Accordingly, while it may be that at the suit of the insured, the endorsement excluding the United States as an omnibus insured would be stricken from the contract, we are not here dealing with a suit by the insured. But rather, this is a suit by a third party who is seeking a gratuitous benefit. In this instance the equitable considerations are inapposite. The third party has not, as has the insured, relied upon the assumption

---

8. United States v. National Insurance Underwriters, 266 F.Supp. at 638.

9. See Annot., 91 A.L.R.2d 546 (1963).

10. Pearl Assur. Co. v. School Dist. No. 1, etc., 212 F.2d 778, 782 (10 Cir. 1954).

11. Annexed separately to the insurance policy was the endorsement reading as follows:
"Automobile Policy Amendment
Government Employees Insurance Company
A Capital Stock Insurance Company
—Not Affiliated with the United States Government
Washington, D. C. 20005
Policy Amendment
Federal Employees Using Automobile in Government Business
It is agreed that the policy does not apply under the Liability Coverages for Bodily Injury or Property Damage to the following as insureds:
1. The United States of America or any of its Agencies.
2. Any person, including the named insured, if protection is afforded such person under the provisions of the Federal Tort Claims Act.
In Witness Whereof, the Government Employees Insurance Company has caused this amendment to be signed by the President and Secretary of the Company.
[George F. Levin] Secretary [David Lloyd Kraeger] President. A–32 (10–64)."

12. A better procedure would be for the insurer to indicate in the cover letter, in a manner similar to that employed in So. Farm Bureau, supra, the extent to which the policy has been modified.

13. Annot., 91 A.L.R.2d 546, 548–549 (1963).

that the policy remains unaltered, for indeed, the third party has not relied at all upon the insured's contract of insurance. Thus, as to the United States, the contract that presently governs the relationship of the parties expressly eliminates any rights of the third-party plaintiff thereby precluding the contention that the United States is entitled to indemnification from the insurer, GEICO.

Reversed.