33 F.3d 62
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 The AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,
Plaintiff-Appellee,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver and
liquidator for First State Bank, Blanchard,
Oklahoma, and in its corporate capacity,
Defendant-Appellant.
 No. 93-6216.
 United States Court of Appeals, Tenth Circuit.
 July 26, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before MOORE, Circuit Judge; McWILLIAMS, Senior Circuit Judge; and ROSZKOWSKI, Senior District Judge.[2]
 
 
 2
 American Casualty Company sought a declaration acknowledging a directors' and officers' liability insurance policy issued to First State Bank of Blanchard, Oklahoma, did not cover a judgment obtained by the Federal Deposit Insurance Corporation against former bank directors and officers. On cross-motions for partial summary judgment, the district court determined the policy did not provide coverage.[3] FDIC appeals contending the provision terminating coverage upon appointment of a receiver or liquidator[4] is unenforceable and American received adequate and timely notice of FDIC's potential claims to trigger coverage.[5] Because we conclude the policy ceased when state regulators closed the bank and no event during the policy term invoked coverage, we affirm.
 
 
 3
 First State Bank purchased a directors' and officers' liability policy from MGIC Indemnity Corporation in 1982. The following year, MGIC issued a three-year renewal policy which American immediately assumed.[6] The renewal policy differed from the original in some respects including substitution of a "Reorganization, Cessation of Business Clause" in place of the "Bank Merger Endorsement." Some of the language in the Reorganization Clause which differs from its predecessor provides:
 
 
 4
 [I]f the Bank has ceased to engage in an active banking business or to accept deposits, coverage shall cease as of the date of the ... cessation of such business, and the Bank shall not be entitled to obtain the extended coverage provided for in Clause 2(b). For purposes of this clause, the cessation of the business of banking shall include, but not be limited to, the appointment by any federal or state banking regulators of a receiver, liquidator or person in a similar capacity.
 
 
 5
 In large conspicuous print, the declarations page of the 1983 policy announces, "THIS IS A CLAIMS MADE POLICY, PLEASE READ CAREFULLY." Page two states in even larger letters running across the text, "THIS IS A CLAIMS MADE POLICY. READ IT CAREFULLY."
 
 
 6
 The bank did not receive a copy of the renewal policy until after it became effective. The cover letter from the insurance agent accompanying the policy counseled the bank, "Please review the policy and if you should have any questions or if we may be of any assistance, please do not hesitate to call." The bank subsequently paid the annual premium.
 
 
 7
 In 1986, prior to the expiration of the 1983 policy, American informed the bank it would not renew the policy again. The bank exercised its right under Clause 2(b), the "Discovery Clause," to extend its coverage "with respect to any claim or claims which shall be made against the Directors or Officers" for another twelve months ending December 20, 1987. On August 13, 1987, the Oklahoma Banking Commissioner closed the bank and appointed FDIC as the bank's receiver and liquidator.
 
 
 8
 Within days, an FDIC attorney wrote American's claims department to announce FDIC had become receiver and liquidator of the bank. American's counsel answered two months later declaring coverage under the policy ceased with the appointment of FDIC as receiver and the August letter did not constitute adequate notice of a claim or potential claim to trigger coverage. In November 1987, FDIC informed eleven former bank directors and officers it might assert claims against them for improper banking practices. FDIC sent a copy of this letter to American within the discovery period as did two of the notified individuals. In August 1988, FDIC filed suit against former directors and officers for negligent operation of the bank, eventually obtaining a favorable judgment. FDIC then sought coverage under the policy to satisfy the judgment. In response, American filed for declaratory judgment to determine its liability.
 
 
 9
 The district court found the policy terminated upon the appointment of a liquidator pursuant to the unambiguous Reorganization Clause. Because prior to this termination American received no insurance claim or notice of potential claim as required by the policy, American had no liability.[7] The failure to return the unused premium demonstrated "inattention" rather than American's belief the policy remained effective. Furthermore, the unused premium constitutes extrinsic evidence immaterial to the court's inquiry.
 
 
 10
 The district court also found the Reorganization Clause enforceable. The bank received sufficient notice of its existence through a short, separately attached endorsement, particularly adequate to alert the insureds--"sophisticated bankers," one of whom owned an insurance agency. The fact the bank received a copy of the endorsement a month after the policy became effective has no consequence because the endorsement was tendered and accepted.
 
 
 11
 FDIC argues the Reorganization Clause is unenforceable and, therefore, coverage did not end upon the appointment of a receiver. Because only a close reading would have revealed the Reorganization Clause and its import, American failed in its duty to inform the bank of the change. The agent's representation the policy had been renewed, American's report to the agent of another change but not this amendment, and the fact the bank did not receive a copy of the policy until after it became effective further disguised the new endorsement. As a result of failure to alert the bank about the reduced coverage, the previous "Bank Merger Endorsement," which would not have terminated coverage, governs. FDIC also challenges the application of a higher standard to bankers and insurance agents regarding the reading of renewal policies. Lastly, FDIC asserts American has either waived its claim the coverage ceased or is estopped from asserting it because American never returned the unused balance of the premium.
 
 
 12
 American contends the Reorganization Clause is an enforceable part of the policy. The bank had no reason to believe the 1983 policy matched the first policy. Compared to the original, the later policy provided longer coverage with the same liability limits for a lower premium. Even if the bank did not actually recognize the provision, the bank received legally sufficient notice of the Reorganization Clause through a separately attached endorsement headlined in large bold type. Bankers do not need more detailed notification. Furthermore, American had no obligation to return the allegedly unearned portion of the premium because the parties bargained for the termination of the policy upon the appointment of a liquidator. Therefore, the bank's premium paid for all the coverage it received. If American had a responsibility to provide a refund, it inadvertently failed to do so, and this error cannot reactivate the policy.
 
 
 13
 This court reviews de novo the grant of summary judgment. Utah Power & Light Co. v. Federal Ins. Co., 983 F.2d 1549, 1553 (10th Cir.1993). Summary judgment is appropriate where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 14
 A court should construe an insurance policy according to its terms unless ambiguity exists. Frank v. Allstate Ins. Co., 727 P.2d 577, 579-80 (Okla.1986) (citation omitted). The Reorganization Clause undeniably states the appointment of a receiver or liquidator by government regulators terminates coverage as of the date of the appointment. As a result of this provision, the bank's failure to notify American of a claim or potential claim prior to the appointment of the FDIC as liquidator and receiver relieves American of any obligation under the policy.
 
 
 15
 The only question remaining is the enforceability of the Reorganization Clause. Oklahoma law does not identify requirements for effectively changing terms in a renewal policy. Therefore, common law principles apply. See Silver v. Slusher, 770 P.2d 878, 884 (Okla.1988) (common law governs unless Oklahoma constitution or statutes clearly and expressly modify it) (citations omitted), cert. denied, 493 U.S. 817 (1989). In Government Employees Ins. Co. v. United States, 400 F.2d 172 (10th Cir.1968), we set standards, in accordance with common law, for making these amendments enforceable. As stated in GEICO, where an insurer fails to alert an insured to the reduced coverage in a renewal policy, the insurer must abide by the greater coverage of the earlier policy. Id. at 175. By itself, an instruction to carefully read the new contract does not sufficiently alert the insured to a change. Id. Though an insured does not have to scour the fine print of a renewal policy for changes, "a short, separately attached boldly worded modification" provides enough notice to an insured of a reduction in coverage. Id. In GEICO, a separately attached endorsement and an instruction in a cover letter to read the new policy carefully furnished enough notice so the insured would uncover the reduction even through a casual reading of the material. Id.
 
 
 16
 The Reorganization Clause appears as a separately attached endorsement in the 1983 policy. The title stands in large bold print, and the new paragraph is set off from introductory text reading, "It is understood and agreed that Clause 7(d) of the Policy is amended to read as follows." This arrangement satisfies the GEICO standard making the Reorganization Clause enforceable. The fact the Reorganization Clause is one of several endorsements attached to the 1983 policy does not diminish the sagacity of this conclusion because an insurer should not be limited to one amendment per renewal policy. Many of these endorsements appear as attachments to the document that stands as the core of both the 1982 and 1983 policies which obscures the visibility of amendments. However, this fact does not erase the endorsements' utility, to highlight certain features of the policy.
 
 
 17
 Granted, MGIC or American could have more conspicuously advised the bank about the new provisions in the 1983 policy. However, the facts of this case do not suggest MGIC knavishly told the bank the 1983 policy mirrored the original and then slipped in new terms which the bank unwittingly accepted. MGIC informed the insurance agency of the 1982 policy's impending expiration three months prior to that date. In this letter, MGIC requested return of a renewal proposal form and other documents necessary "[t]o enable MGIC to offer renewal terms and conditions for the [Directors' and Officers'] Liability Policy." The bank's president and chairman signed the renewal proposal form immediately below the language, "[I]t is agreed that this Proposal Form and any attachments hereto shall be the basis of the contract should a policy be issued, and this form will be attached to and become a part of the Policy." MGIC received the completed form in November 1983. The following January, the insurance agency forwarded a copy of the policy to the bank along with an invoice for the annual premium. The cover letter admonished the bank to review the policy and contact the agency if questions arose. After receiving the policy, the bank paid the necessary premium. The circumstances surrounding the renewal indicate the bank knew beforehand MGIC might offer different terms in a renewal policy and the bank accepted the renewal policy with its new provisions.
 
 
 18
 American's alleged failure to return the "unused" premium does not negate the Reorganization Clause's enforceability. American had no obligation to return any portion of the premium when the policy terminated in August 1987. By accepting the policy, the bank agreed to the Reorganization Clause and assumed the risk its premium would cover a shorter period due to cessation of business. American's retention of the entire premium did not violate the terms of the clause nor render it unenforceable. See Sorenson v. Hartford Accident and Life Ins. Co., 585 P.2d 440, 441-42 (Utah 1978) (enforcing clause providing for termination of coverage if insured's employment ended despite insurer's retention of premium for period following termination where group insurance policy did not offer return of premium upon termination of coverage). But see Haneline v. Turner White Casket Co., 76 S.E.2d 372, 373-74 (N.C.1953) (according to group insurance policy terms, insured's coverage ceased at conclusion of policy month in which his employment ended even though insured paid his share of premium for another two months, but insurer must refund premium for uncovered months).
 
 
 19
 We conclude the Reorganization Clause is enforceable and prevents FDIC's recovery because the bank never made a claim for coverage during the life of the policy. We do not consider the propriety of the remainder of the district court's opinion. The judgment of the district court is AFFIRMED.
 
 
 20
 The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Stanley J. Roszkowski, Senior Judge for the United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [3]
 The court ruled the other issues moot and ordered judgment for American
 
 
 [4]
 The district court and the parties variously refer to FDIC as liquidator or receiver. Apparently, FDIC acted in both capacities. The nomenclature does not matter here because the outcome would be the same in each instance
 
 
 [5]
 FDIC also appeals the denial of its reconsideration motion
 
 
 [6]
 American assumed the policy effective November 1, 1983, which preceded the beginning of the policy period, December 20, 1983
 
 
 [7]
 As alternative grounds for finding no liability, the court ruled the bank and FDIC did not provide adequate notice of claims or potential claims during the policy period or proper notice of claims during the discovery period as required for coverage