AMERICAN CASUALTY COMPANY,
Plaintiff,

v.

Robert J. BERANEK, et al., Defendants.

Civ. A. No. 92–2215–GTV.

United States District Court,
D. Kansas.

Aug. 19, 1994.

Thomas E. Rice, Jr., Baker, Sterchi & Cowden, Kansas City, MO, Edward E. Nicholas, III, Barbara P. Flannagan, G. Rodney Young, II, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, VA, for American Cas. Co. of Reading Pa.

Tim E. Dollar, Kuraner & Schwegler, Kansas City, MO, Steve A. Leben, Judge, Overland Park, KS, Don A. Peterson, Brenner, Lockwood & Peterson, Kansas City, MO, for Robert J. Beranek, Gregory J. Bird, Steve T. Cauble.

N. Jack Brown, Boddington & Brown, Chtd., Kansas City, KS, for Oliver S. Brown.

Heather Suzanne Woodson, Stinson, Mag & Fizzell, Overland Park, KS, John C. Aisenbrey, Stinson, Mag & Fizzell, Kansas City, MO, for L.J. Heinemann, Michael D. Riney, Robert Wells.

Michael D. Riney, pro se.

Frank J. Schwartz, pro se.

James E. Kelley, Jr., Lewis, Rice & Fingersh, Kansas City, MO, for Phyliss L. Windle.

Leonard A. Thomas, pro se.

Terri L. Bezek, Lawrence D. Greenbaum, Charles A. Getto, T. Daniel Venters, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Carolyn A. Arthur, Resolution Trust Corp., Overland Park, KS, for Resolution Trust Corp.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on Plaintiff's Motion for Summary Judgment (Doc. 83). Defendants have responded and oppose the motion. The court has considered the parties' submissions and supporting exhibits and is prepared to rule on the motion. The court, therefore, denies the Plaintiff's Request for Oral Arguments on Plaintiff's Motion for Summary Judgment (Doc. 91). For the reasons stated in this memorandum and order, the Plaintiff's Motion for Summary Judgment is granted.

This is a declaratory judgment action brought by American Casualty Company (ACC) to determine whether a directors' and officers' liability insurance policy containing a provision excluding coverage for claims brought by any "national or state regulatory agency" (the "Regulatory Action Exclusion") bars coverage for losses arising out of a lawsuit filed by the Resolution Trust Corporation (RTC) against the directors and officers of Colonial Savings and Loan Association of America (Colonial Savings). ACC raises other issues in this action, but because the effect of the regulatory action exclusion is dispositive of the case, the court does not reach them.

## I. SUMMARY JUDGMENT STANDARDS

■ In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving

party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. FACTUAL BACKGROUND

The facts of this case are largely uncontroverted and have been established by the parties in accordance with D.Kan. Rule 206(c). Those facts that have been controverted have been viewed by the court in the most favorable light to the non-moving party.

Colonial Savings was a savings and loan association located in Liberal, Kansas. From September 24, 1982 to September 24, 1985, Colonial Savings was covered by a Directors' and Officers' Liability Insurance Policy (MGIC policy) issued by MGIC Indemnity Corporation. The premium for the MGIC policy was $7,800 for the entire three-year period. The MGIC policy contained a "General Limitation of Coverage Endorsement" which provided the following:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to:

any claim or action or proceeding brought by or on behalf of the Federal Home Loan Bank Board and/or the Federal Savings and Loan Insurance Corporation.

In 1985, the MGIC policy was renewed by ACC, which had taken over the policy. On September 24, 1985, ACC issued a Quotation for Insurance to Colonial Savings which listed endorsements that were included in the renewal policy. The regulatory exclusion, which had been substantially revised by ACC, was listed as "G–11187–A Limitation Coverage." In October, ACC issued the one year renewal policy for $5,288. The renewal policy contained Endorsement No. 7 (regulatory exclusion) which provided:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to:

any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of such Agencies by or on behalf of such Agencies in the name of any other entity of solely in the name of any Third Party.

On August 29, 1986, ACC issued a Quotation for Insurance to Colonial Savings. On October 6, 1986, ACC issued the renewal policy for the period September 24, 1986 to September 24, 1987 at a cost of $4,140. The Quotation for the 1987–1988 policy was issued on August 20, 1987. On October 7, 1987, ACC issued a renewal policy for the period of September 24, 1987 to September 24, 1988 for $16,600. On August 19, 1988, ACC issued a Quotation for Insurance to

Colonial Savings. On October 5, 1988, ACC issued a renewal of the policy for the period of September 24, 1988 to September 24, 1989 with a premium of $17,622. The defendants seek coverage under the 1988 policy.

The 1988 Policy provides "claims-made" coverage. Subject to all applicable policy terms, conditions and endorsements, the policy provides up to $500,000 in coverage for "Loss" for claims made against Colonial Savings directors and officers during the policy period. Alternatively, under Clause 6(a) of the policy, if during the policy period an insured becomes aware of an occurrence which may subsequently give rise to a claim against the directors and officers for a wrongful act, and if the insured gives written notice to ACC in compliance with the provisions of Clause 6, claims made against the directors and officers thereafter based on the same wrongful act will be treated as having been made during the policy period.

The 1988 Policy includes the regulatory exclusion which was added to the policy in 1985. On March 2, 1989, the Federal Home Loan Bank Board placed Colonial Savings in conservatorship. The Federal Savings and Loan Insurance Corporation (FSLIC) was appointed as conservator of the institution. By letter dated March 2, 1989, Robert J. Beranek, President and Chief Executive Officer of Colonial Savings, purported to give ACC notice of "claims." The body of the letter states in pertinent part as follows:

> You are hereby notified of the existence of certain claims covered by the above policy. These claims are currently under investigation and are not presently ascertainable.

ACC received a cover letter, also dated March 2, 1989, with the letter from Mr. Beranek. The cover letter states that Mr. Beranek has "no personal knowledge of any claims."

On March 4, 1989, Timothy J. Reimer, Managing Agent for the Conservator, sent a letter to ACC. That letter also purports to give notice relative to the directors' and officers' insurance policy. The body of the letter states in pertinent part as follows:

> ... we notify you of potential claims against the former directors and officers of the Insured for their mismanagement of

lending and for other activities we believe constitute "Wrongful Acts" as defined in Policy Number ZED 300691549 (and such other or previous policies as may be applicable). Such acts as are now known appear to include: following hazardous lending and lax collection practices' failing to establish adequate internal controls; operating with inadequate capital reserves and a large volume of poor quality loans; operating with policies and practices which exhibit self-serving characteristics; and operating in violation of state and federal laws and regulations.

Prior to expiration of the 1988 Policy, ACC exercised its right to cancel pursuant to Clause 7(b) of the policy. On March 24, 1989, ACC gave the requisite written notice of cancellation by certified mail. Cancellation was effective on April 26, 1989. On September 22, 1989, Colonial Savings conservatorship was converted into a receivership and RTC appointed as receiver of Colonial Savings. RTC as receiver succeeded to all of Colonial Savings' assets, including claims against the association's former directors and officers.

On February 27, 1992, RTC in its receivership capacity filed a civil action in this court against Robert J. Beranek, Gregory J. Bird, Oliver S. Brown, Steve A. Cauble, L.R. Heinemann, Michael D. Riney, Frank J. Schwartz, Robert Wells, Phyliss L. Windle, Leonard A. Thomas and Ridgely W. Potter, former directors and officers of Colonial Savings (the individual defendants in this declaratory judgment action), and against Colonial Savings' former general counsel.

In late March and early April, 1992, the Officer/Director Defendants advised ACC of the RTC lawsuit and either requested contemporaneous payment of defense costs incurred in connection with the RTC lawsuit or sought to tender their defense in the RTC lawsuit to ACC. ACC, by counsel, subsequently notified the Officer/Director Defendants that ACC was denying coverage on the grounds that the RTC lawsuit fell under several policy exclusions. ACC further reserved its rights to deny coverage for the post-expiration claims asserted in the RTC

lawsuit on the grounds that the insureds failed to give adequate notice of potential claims during the policy period.

## III. DISCUSSION

Plaintiff contends in its motion for summary judgment that Endorsement No. 9 in the 1988 policy issued to defendants excludes the RTC's lawsuit from coverage under the policy. The endorsement reads:

> It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to:
>
> any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation ... or any other national or state regulatory agency ... including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise....

Plaintiff argues that the clear language of the policy bars coverage for any loss—including the cost of a defense—suffered in connection with any claim against Colonial Savings' directors and officers brought by any regulatory agency, including the RTC.

The enforceability of such regulatory action exclusions has been addressed by numerous courts. In *Federal Deposit Ins. Corp. v. American Casualty Co.*, 975 F.2d 677 (10th Cir.1992), the Court of Appeals for the Tenth Circuit addressed the enforceability of a regulatory action exclusion with language identical to Endorsement No. 9 and concluded that the exclusion was neither ambiguous nor against public policy. Other decisions upholding similar regulatory action exclusions include *St. Paul Fire & Marine Ins. Co. v. FDIC*, 968 F.2d 695 (8th Cir.1992), *American Casualty Co. v. FDIC*, 944 F.2d 455 (8th Cir.1991), and *American Casualty Co. v. Baker*, 758 F.Supp. 1340 (C.D.Cal. 1991).

In response to plaintiff's motion, defendants make three arguments. First, defendants contend that Endorsement No. 9 was not adequately brought to the attention of Colonial Savings when it was added to a renewal policy. Second, the defendants contend that Endorsement No. 9 is void for lack of consideration. Third, defendants argue that the endorsement does not operate to exclude coverage from losses in connection with the RTC, because the RTC is not listed in the endorsement and does not qualify as a regulatory agency. None of defendants' arguments are persuasive to the court.

The directors' and officers' liability policy issued to Colonial Savings by MGIC for the policy period of September 24, 1982, to September 24, 1985, includes a "General Limitation of Coverage Endorsement" that reads as follows:

> It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors and Officers based upon or attributable to:
>
> any claim or action or proceeding brought by or on behalf of the Federal Home Loan Bank Board and/or the Federal Savings and Loan Insurance Company.

In 1985, when ACC offered to renew the policy after taking over the policy from MGIC, it inserted the regulatory action exclusion with broader language than the prior endorsements.[1] The uncontroverted facts of this case establish that at the time the broader endorsement was added, ACC sent a quotation for insurance listing the Regulatory Action Exclusion endorsement as "G–11187–A Limitation of Coverage." The text of the broader endorsement was attached to the 1985 Policy.

The broader endorsement barred payment by ACC on any claims against the Directors or Officers brought by

> "the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agencies...."

The "G–11187–A Limitation of Coverage" endorsement was similarly listed on each sub-

---

1. In 1985, the Regulatory Action Exclusion was Endorsement No. 7. In later policies, including the 1988 policy now at issue, it was listed as Endorsement No. 9.

sequent quote for insurance, and the text of the endorsement was attached to each subsequent policy.

Defendants argue that listing the Regulatory Action Exclusion on the quotation for insurance as "G–11187–A Limitation of Coverage" and attaching the text of the endorsement to the insurance policy did not adequately bring the limitation to the attention of Colonial Savings.

The general rule is that "an insurance company is bound by the greater coverage in an earlier policy where the renewal contract is issued without calling to the insured's attention a reduction in policy coverage." *Government Employees Ins. Co. v. United States*, 400 F.2d 172, 175 (10th Cir.1968). "When a renewal policy is issued, it is presumed, unless a contrary intention appears, that the parties intended to adopt in the renewal policy, the terms, conditions and coverage of the expiring policies." *Id.* (quoting *Pearl Assur. Co. v. School Dist. No. 1*, 212 F.2d 778, 782 (10th Cir.1954)). In *Government Employees* the endorsement was attached as a separate addition to the contract and it was held to be sufficient to inform the insured of the change. *Id.; see also St. Paul Fire and Marine Ins. Co. v. FDIC*, 968 F.2d 695, 700 (8th Cir.1992) ("renewal letter and the renewal policy, considered together, constituted conspicuous notice in writing of the change in coverage").

■ In the present case, several changes in the policy were apparent on the face of the 1985 quotation for insurance. First, the proposed 1985 policy included a limit of $2,000,-000. The 1982 MGIC policy limit was $3,000,000. Second, the proposed 1985 policy was a one-year policy. The MGIC policy was a three-year policy. Third, the proposed 1985 policy premium was $5,288 for the one-year period. The MGIC policy premium was $7,800 for the three-year period. Finally, the proposed 1985 policy listed sixteen endorsements. The MGIC policy included eleven endorsements.

These changes, all apparent on the face of the 1985 quotation for insurance, were sufficient to call attention to the changes in coverage. The defendants had no right to assume, given these numerous conspicuous changes, that the renewal policy was identical to the original insurance policy. Each subsequent quotation for insurance listed the regulatory action exclusion in the same manner as the 1985 quotation. The endorsements were attached to the 1985 policy as well as to each subsequent policy. *See Government Employees*, 400 F.2d at 175 ("Hence, while it is inequitable to require an insured to search the fine print of each renewal policy, to require that he be aware of a short, separately attached boldly worded modification, seems clearly appropriate."). Additionally, Robert J. Beranek, president and chief executive officer of Colonial Savings, testified in his deposition that he was aware of the Regulatory Action Exclusion in the 1988 policy (the policy at issue).

■ The defendants were adequately notified of the Regulatory Action Exclusion endorsement in the 1988 policy when the endorsement was revised in 1985. As a result, the endorsement was part of the insurance policy contract from October 1985 to April 26, 1989, when ACC cancelled the policy.

■ The defendants also contend that Endorsement No. 9 (the Regulatory Action Exclusion) is void for lack of consideration. The argument is rejected because Endorsement No. 9 was added to the Directors' and Officers' liability policy in a renewal contract, not as a modification to a policy then in effect.

"The renewal of an insurance policy constitutes a separate contract to be governed by general contract principles...." *Government Employees Ins. Co. v. United States*, 400 F.2d 172, 174–75 (10th Cir.1968). This case does not involve modification of an existing policy, but instead involves a renewal at the end of a contract period, and thus is a separate contract. *See id.*

The 1985 policy (the policy in which the endorsement at issue was revised) provided the directors and officers with liability coverage up to $2,000,000 in exchange for a premium of $5,288. Consideration was clearly present. The fact that the coverage was more limited and more costly is irrelevant because the 1985 policy constituted a separate contract, not a modification of an existing contract.

Finally, the defendants contend that the Regulatory Action Exclusion does not apply

to coverage of losses in connection with claims brought by the RTC because the RTC is not specifically listed in the endorsement and the RTC does not qualify as a regulatory agency.

Endorsement No. 9 in the 1988 policy excludes from coverage claims brought by certain named agencies, "or any other national or state regulatory agency." Defendants argue that the RTC is not a "regulatory agency." Defendants attempt to distinguish the RTC based on its control over failed financial institutions in contrast to the broader powers of the FDIC and FSLIC, which are specifically named in the endorsement, over healthy financial institutions.

The RTC was established to act as a conservator or receiver of insured depository institutions. 12 U.S.C. § 1441a(b)(1)(B). The RTC acts as "an agency of the United States to the same extent as the Federal Deposit Insurance Corporation when it is acting as conservator or receiver of an insured depository institution." *Id.* The RTC's express duties under FIRREA direct that the RTC manage and resolve cases involving failed depository institutions. *Id.* § 1441a(b)(3)(A). FIRREA authorizes the RTC to "adopt the rules, regulations, standards, procedures, guidelines, and statements necessary" to carry out its duties. *Id.* § 1441a(b)(11)(A). The fact that the RTC's regulations only involve failed financial institutions does not take it without the definition of a regulatory agency.

Other courts agree that the RTC is a regulatory agency and falls within the scope of a regulatory action exclusion. *See e.g., American Casualty Co. v. Baker*, 22 F.3d 880, 895 (9th Cir.1994) (citing numerous courts in agreement and rejecting the RTC's "strained" argument that it is not a "regulatory agency"); *Resolution Trust Corporation v. Miroman*, 1994 WL 90488 (E.D.La. Mar. 11, 1994), *aff'd*, 22 F.3d 1357 (5th Cir.1994) ("The regulatory exclusion unquestionably would bar these same claims if brought by the FSLIC, the RTC's predecessor.... FIRREA has merely allocated a portion of the FSLIC's regulatory authority to the RTC ... so it is incorrect to suggest that the exclusion's 'regulatory agency' language does not apply to the RTC.").

Finally, because the regulatory action exclusion was drafted before Congress reorganized the banking industry's regulatory organizations, it was impossible for ACC to specifically list RTC in the exclusion. *See Baker*, 22 F.3d at 895 ("It is unreasonable to protect the RTC from operation of the exclusion merely because [the insurer] was unable to predict that Congress would restructure its regulatory framework of depository institutions and create a new federal agency."). The RTC is a regulatory agency within the contract language and as contemplated by the contracting parties.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 83) is granted.

IT IS FURTHER ORDERED that Plaintiff's Request for Oral Arguments on Plaintiff's Motion for Summary Judgment (Doc. 91) is denied.

Plaintiff shall prepare and submit to the court a journal entry of judgment in accordance with the conclusions set out in this memorandum and order.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**